Johnson, C. J. It is contended by the appellants, that the note executed by them in favor of the appellees, operated as an ex-tinguishment of the cause of action upon which this suit was founded: and that, therefore, they were entitled to a judgment in the court below. An action cannot be m aintained on an original contract for goods sold and delivered by one who has received a note as conditional payment, and has passed away the note. Harris v. Johnson, 3 Cranch 318. A promissory note given and received for and in discharge of an open account, is a bar to an action upon the open account, although the note be not paid. A note without a special contract, will not of itself discharge the original cause of action. But, by express agreement, even the note of a third person may be received in payment. 6 Cranch 253. In general, a higher security taken from the debtor himself, extinguishes the origiual contract. This proceeds upon a presumptiou of law, that it is taken in satisfaction of the original debt; for if it appear otherwise upon the face of the security, it will not operate as an extinguishment. It .is a mere question of intention. The United States v. Lyman, 1 Mason 482. It was admitted by the witness of the appellees, that the note was executed upon a settlement of the accounts between the parties, and that it was to be considered as a satisfaction of the origiual debt, in case it should be paid with a certain slave or otherwise; but that not until then was the suit to be dismissed. The only point then to be determined is, whether the contingency has happened, upon which the note was to operate as an extinguishment of the original debt. Thomas N. Byers, the witness of tire appellees, and the only one who testified in the case, states, in substance, that about (he 31st December, 1845, He, as the agent of the appellees, called on the appellants to settle said claim, and that he, as such agent, settled the same at the sum of $558 92-100, with interest at the rate of six per cent, from the 18th of March, 1845, and that he then took from them their note for that amount, with a verbal understanding that in case it should be settled by the sale of a certain negro or otherwise, that then, and not until then, should it operate as an extinguishment of the original debt; and that, in that event, the suit should be dismissed. He further testified, that on the thirteenth of February, 1846, he called on the appellants, and it was agreed that he should have a certain slave at the sum of $750, and that he gave, in payment therefor, the Davies & Gaines claim, and a claim against Costar, individually, in favor of Stephen Stewart, for about two hundred and forty dollars; that Costar called the boy into the bar-room of his hotel; that he looked at him, and that the boy then retired; that after some consultation he agreed to give the $750, and a bill of sale or memorandum of the sale was made, signed, and sealed, as he believed, by Harvick, one of the appellants, for the slave, anti handed to him; that he handed to Costar their note, which they had executed to tire appellees, and also the note or claim dye to Stewart, and that upon a settlement, there was a balance due from the appellants of about eighty dollars, for which Costar gave his note, signed by the firm’s name, and made payable to Byers and Chapman. This testimony being confined exclusively to a matter that arose after the commencement of the suit, was admissible alone under the general issue, for the purpose of mitigating the damages, and could not possibly operate as a bar to the whole action. The ap-pellees, in answer to the argument that the execution of the note operated as an extinguishment of tire original debt, insist that it was only so to be regarded in the event that it was paid by the sale of a negro or otherwise; "and that the negro contracted for never was delivered, so as to constitute a sale, and that the note had not been paid in any manner whatever. This position is supposed to have been based upon the statute of frauds; and that it was conceived that, in order to effect a sale of personal property, under that act, so as to pass the title, and vest it in the vendee, it was absolutely essential that an actual delivery should have been made. If an actual delivery was not necessaiy in this case, to pass the title, then it is clear, that the condition upon which the note was to become a satisfaction, had been performed; and that in case it had been properly pleaded, would have been a complete bar to the action based upon the original contract. If the argument urged, why it could not operate as a satisfaction and extinguishment of the original debt, was drawn from the statute of frauds, it is perfectly manifest that it was not legitimate, as the case cannot by possibility come within the operation of that act. Where the purchase money is paid at the time of the sale of personal property, there certainly can be no necessity for an actual delivery. This is one of the very cases excepted by the statute. The instant that Byers, as the agent of the appellees, purchased the slave and paid the price agreed upon, the title passed out of the appellants, and vested in the appellees; nor did it lie in the mouth of either, from that time, to deny that the sale had been fully and completely consummated. If the appellees had commenced their suit for the property thus conveyed, it most unquestionably would have been no answer to the declaration, that it had not actually been delivered; and it is equally clear that such a plea could not avail them in an action to recover back the purchase money. It is clear, therefore, that had this matter been pleaded puis darrein continuance, it would have constituted a full and effectual bar to the entire suit; but as it was offered under the general issue, it could only mitigate the damages. It is clear, therefore, that the Circuit Court erred in rendering judgment against the appellants for the full amount claimed, and that under the state of case, as presented by the record, if should have been alone for nominal damages and costs. The cause is, therefore, reversed, and remanded with instructions to proceed -oh cording to law, and not inconsistent with this opinion.