# LYMAN vs. BABCOCK.

CONTRACTS: GUARANTY: EVIDENCE: PENALTY. *(1) Consideration. (2) When guarantor relieved from liability by release of principal. (3) How guarantor may exonerate himself. (4) Damages for nonperformance by principal in such case. (5) Evidence of circumstances under which contract was made. (6) Contract construed: Penalty or liquidated damages.*

1. Where a mortgagee credited the mortgagor, by indorsement on his notes and release to that extent of the mortgage, with a certain sum as "the balance of credit for certain lands" conveyed to such mortgagee by third parties, this was a sufficient *consideration* to support a further agreement by the mortgagor; especially as it does not appear whether the mortgagee's liability to him was legal or equitable; whether before or only then liquidated; or whether presently due or not.

2. Where B. guaranties S.'s contract, and afterwards promises to pay the guarantee a certain sum in case of S.'s nonperformance, a release of S. from his contract by the guarantee will not relieve B. from liability, if such release was induced by his own act. So *held* where S.'s contract was to convey to the guarantee certain lands of which he *could obtain title only through B.*, and which the guarantee agreed to receive at a fixed price in payment of S.'s indebtedness to him; and where B., subsequently to his said undertakings, assured the guarantee that he *would not convey* the lands to S. And it is immaterial, in such a case, that B. refused to convey to S. because the latter failed to pay him for the lands.

3. The guarantor of a contract to convey lands, who wishes to exonerate himself by performing the contract himself, is bound at least to put himself absolutely in the place of the principal, and not only to convey the same title to the same lands, but also to receive *the same payment* for them.

[4. In case of such an offer by the guarantor (having power to perform), *quære*, whether the guarantee, refusing the offer, could recover from him more than *nominal* damages upon nonperformance by the principal.]

[5. In an action on a contract, evidence is always admissible to show the circumstances under which it was made, and the relations of the parties to the subject matter, and to each other respecting the subject matter, where on the face of the contract its terms are obscure in themselves, in relation to the subject matter.]

6. A contract between L. and B. recites that, whereas L. has given credit to B. on B.'s notes and mortgage, for $10,000, "being the *balance of credit* for certain lands conveyed to L. by F. and W.;" and whereas "said $10,000 will be due to said L. upon the contingency" that B. shall not

| 40 | 503 |
| 75 | 188 |
| 40 | 503 |
| 79 | 220 |
| 40 | 503 |
| 92 | 31 |
| 40 | 503 |
| 104 | 641 |
| 40 | 503 |
| 105 | 543 |
| 40 | 503 |
| 108 | 225 |
| 40 | 503 |
| 110 | 5170 |
| 53 LRA | 128 |

procure for him the right of selection, from a large tract, of a certain amount of lands which were to be conveyed to L. by one S. under a previous contract, or in case L. shall fail to procure the title to such lands for any reason; and whereas a certain litigation touching the title to said lands is pending: "now, therefore," B., "for value received," promises to pay L. $10,000 if it shall be determined by said litigation that L. shall not be entitled to said land, or if, said land being recovered, L. shall not have the selection of his portion; and that when either of said facts shall be ascertained, the said indorsement on the mortgage shall be canceled, or B. shall pay said $10,000 with interest. There being no evidence *dehors* the contract to aid in its construction, *Held,*

(1) That the word "credit," in the first recital of the contract, must be understood as implying *some legal or equitable right of B.,* by reason of the conveyance of lands to L. by third parties; which right constitutes a *consideration* for the credit of $10,000 indorsed upon B.'s notes and mortgage; and such indorsement cannot be regarded as given upon the sole consideration of B.'s conditional agreement to pay $10,000.

(2) That B.'s contract must therefore be treated as a promise to pay $10,000 *either as penalty or as liquidated damages,* upon the contingencies described.

(3) That as, by the terms of the contract, the whole sum named is alike payable whether L. shall wholly fail to obtain title from S., or shall merely fail in the right of selection, and upon either a total or a partial failure in either particular, the sum must be treated as a *penalty.*

APPEAL from the Circuit Court for *Fond du Lac* County.

An agreement was entered into between one Geo. C. Smith and the plaintiff, dated November 6, 1871, whereby Smith, in consideration of $2 per acre, agreed to sell and did sell to the plaintiff an undivided one-half of about 24,000 acres of land lying in Wisconsin, "being the third acceptance on the United States military road commencing at Fort Howard and running northwest." The contract recited that the title to said lands was in litigation, and the sale was declared to be upon condition that Smith or his brother could make good title to the lands on or before August 25, 1877; otherwise plaintiff was to have his election to declare the contract void, provided such election should be made before August 25, 1878. On the 15th of March, 1872, the defendant executed and delivered to plaintiff the following instrument: "Whereas *George N.*

*Lyman* has given me credit on my notes and mortgage for $10,000, being the balance of credit for certain lands conveyed to said *Lyman* by Fox and Weston; and whereas the said $10,000 will be due to said *Lyman* upon the contingency that I shall not procure for said *Lyman* the right of selection of such portion of lands as are to be conveyed to said *Lyman* by Geo. C. Smith, of Chicago, under contract dated November 6, 1871, or should said *Lyman* fail to procure the title to such lands for any reason; and whereas there is now pending a certain suit in respect to the title of said lands, instituted by George N. Fletcher, in the Oconto county circuit court: Now, therefore, I, *J. W. Babcock*, do hereby, for value received, agree to pay to the said *George N. Lyman* the sum of $10,000, whenever it shall be determined by said litigation, either that the said *Lyman* shall not be entitled to the said land, or that, said land being recovered, the said *Lyman* shall not have the selection of his portion of said lands, not less than 6,000 acres, out of the whole amount of lands of which said Smith shall be entitled to a portion, being about 24,000 acres; and when said fact shall be ascertained, that said *Lyman* shall not receive said lands, or, receiving them, shall not have the preference in selecting his share thereof, then the indorsement on said mortgage shall be canceled, and the security of the said mortgage for that amount restored, or the said *Babcock* shall pay the said $10,000 with the interest thereon."

The complaint herein sets out both the above contracts, and alleges that on the 15th of March, 1872, plaintiff held two notes of defendant, amply secured by mortgage; that he gave defendant credit for $10,000 on such notes and mortgage in consideration of defendant's written agreement of that date, above recited; that defendant, to induce him to give such credit, represented that he (defendant) had such an interest in the lands covered by the Smith contract, as gave him the right to select 12,000 acres in severalty, and had agreed to con-

vey his interest to Smith, and would secure to the plaintiff, through his contract with Smith, the right to select in severalty 6,000 acres out of said special tract of 24,000 acres, which right of selection was worth at least $10,000; that after such indorsement on the mortgage, the mortgaged premises were sold to a *bona fide* purchaser without notice of the contract; that the suit of Fletcher was long since disposed of, and the defendant or his assigns entitled to a patent from the state of Wisconsin for an undivided half of 24,000 acres; but that he is not entitled to any other share or interest than such undivided half; that defendant has refused to convey to George C. Smith or Charles Smith, or give them any paper by which they can get title, and, by reason thereof, the plaintiff cannot obtain title; that the plaintiff, in consequence of the premises, released said Smith from his contract; and that the defendant is indebted to the plaintiff in the sum of $10,000.

The answer contains a general denial, and alleges that before the commencement of the suit, defendant offered to give plaintiff his selection of 6,000 acres of land according to the agreement, but plaintiff refused to accept the land.

On the trial, plaintiff offered in evidence the agreements above recited. The contract with Geo. C. Smith bore a cancellation on its face, dated March 27, 1873. Evidence was introduced tending to prove the other allegations of the complaint, and also that, about the time this suit was commenced, defendant had contracted to sell all his interest in the 24,000 acres of land to a third party, and did convey all the lands to other parties after this suit was brought; and that defendant never had more than an undivided half interest, and therefore had no power to convey any part of the land in severalty.

Defendant's evidence tended to show that he had refused to let Smith have the lands for the reason that Smith refused to pay him for them in any way; and that he had offered them to the plaintiff, but the latter had refused to take them at any price.

The defendant asked instructions to the effect that the plaintiff could not recover, if defendant had offered to carry out the Smith contract and give plaintiff the land as agreed, and plaintiff had refused to accept the land; or if plaintiff had given defendant no consideration for the agreement except what he owed him, and had taken advantage of defendant's circumstances and had compelled him to sign the agreement as the only means of getting what belonged to him; and that if the agreement was an unconscionable one, and in the nature of a forfeiture, the plaintiff could in no event recover, for its breach, more than such reasonable damage as he had sustained, not exceeding the amount specified. These instructions were denied.

The court charged the jury, substantially, that the consideration named in the contract was valid, and that if the contract on defendant's part had not been fulfilled, plaintiff was entitled to recover $10,000 with interest.

Verdict for the plaintiff for $12,220; new trial denied; and from a judgment pursuant to the verdict, the defendant appealed.

*Edward S. Bragg*, for appellant, argued that if defendant offered to place *Lyman* in the same position, as to the property, which would have been attained had each of the agreements been fulfilled, plaintiff could not refuse the offer, and recover damages, which would be merely the result of his own act. The contract between the parties was in the nature of a penalty, and, in case of a breach, plaintiff can recover only the actual damages proven. *Ricketson v. Richardson,* 19 Cal., 330. 2. The court erred in instructing the jury that there was a good consideration for the contract. The charge and refusal together amount to an instruction that the payment of one's own debt forms a good consideration to support a promise to pay the debt of a third person. 3. The jury had a right to find from the evidence, that the agreement sued upon was unconscionable, and in the nature of a forfeiture.

It was in the nature of a wager, or a penal forfeiture, on its face.

For the respondent, a brief was filed by *Taylor & Sutherland*, and the cause was argued orally by *Mr. Taylor:*

1. It has been already decided that this contract was valid, purporting to be for a sufficient consideration, and not a bet or wager. *Lyman v. Babcock*, 36 Wis., 314. The recitals in the contract sufficiently import a consideration. *Cheney v. Cook,* 7 Wis., 413; 4 id., 190; *Whitney v. Stearns,* 16 Me., 394; 1 Parsons on Con., 357. And the evidence shows that there was a sufficient consideration. 2. The parties have fixed the amount of damage which the defendant should pay in case of his failure to perform his promise. It is clearly a case of liquidated damages. Sedgw. Dam., 421; *Berrinkott v. Traphagen*, 39 Wis., 219; *Yenner v. Hammond*, 36 id., 277; *Ryan v. Martin*, 16 id., 57; *Fitzpatrick v. Cottingham*, 14 id., 219; *Pierce v. Jung*, 10 id., 30; *Bagley v. Peddie*, 5 Sandf. S. C., 192; *Reilly v. Jones*, 1 Bing., 302; *Smith v. Smith*, 4 Wend., 468; *Knapp v. Maltby*, 13 id., 587; *Dakin v. Williams*, 17 id., 447; 22 id., 201; *Leighton v. Wales*, 3 M. & W., 545; *Hodges v. King*, 7 Met., 583; *Perkins v. Lyman*, 11 Mass., 81; *Davies v. Penton*, 6 Barn. & Cress., 216. 3. It would be no defense to *Lyman's* right to recover, that *Babcock* might satisfy a court or jury that *Lyman* in fact owed him, at the time the contract was made, the sum of $10,000. *Lyman*, disputing the claim in good faith, would have the right to have the matter determined by the court, and the waiving of that right would be a sufficient consideration for the promise of the defendant to return the money. Parsons on Con., 425–6 and cases cited; *Longridge v. Dorville*, 5 Barn. & Ald., 117; *Wilkinson v. Byers*, 1 Ad. & El., 106; *Stracy v. Governor and Company of Bank of England*, 6 Bing., 754. 4. The offer of *Babcock* to convey the land to *Lyman* was no defense to the action. This was not in pursuance of the contract, and moreover the defendant had no power

to make a good conveyance of the land in question. A tender of performance by a party not having the power to perform, is not a good tender, and does not relieve the party from the consequences of his breach of contract. *Croninger v. Crocker*, 62 N. Y., 157; *Champion v. Joslyn*, 44 id., 653; *Reed v. Bank of Newburgh*, 6 Paige, 337.

RYAN, C. J.   I. The objections seriously urged against the respondent's right of recovery, as we understand them, resolve themselves into three.

*First.*   It was claimed that the only consideration to support the appellant's agreement was the respondent's payment of his own debt to the appellant; and that payment of a debt is not a valid consideration for a new promise to the debtor. But, assuming for the present the appellant's construction of the contract, the nature of the respondent's liability to the appellant does not appear: whether legal or equitable; whether before or then only liquidated; whether presently due or not; whether founding a present or future action at law, or a present or future equitable suit.   And the respondent's liability, of whatever nature it may have been, does not appear to have been secured or to have borne interest; while the appellant's debt to the respondent appears to have been secured and to have borne interest.   The respondent, on the appellant's own construction, was not bound to apply the former on the latter, by way of credit or offset; his doing so was voluntary, and a sufficient consideration for the agreement.   In the appellant's own view, the contract was one of mutual benefit: the credit on the mortgage on the appellant's side, and the appellant's agreement on the respondent's side.   Such mutual agreements are always upheld as sufficient consideration for each other.

*Second.*   It was claimed that the appellant's first agreement was a guaranty of Smith's contract with the respondent, and that the appellant's second agreement was dependent upon Smith's performance; that therefore the respondent's release

of Smith's contract put it out of the appellant's power to perform either of his agreements, and operated as an extinguishment or release of them. We might perhaps think so too, if the respondent had not been led to release Smith by the appellant himself.

It appears that there was some contract or dealing between the appellant and Smith, by which Smith expected to receive title from the appellant to the lands which he agreed to convey to the respondent; the title or right to the title being in the appellant himself, and Smith's expected title resting solely on the appellant's transfer to him. Before the respondent cancelled his contract with Smith, the appellant positively and solemnly assured the respondent that he, the appellant, would not make title to Smith, so as to enable Smith to convey to the respondent; thus authorizing the respondent to assume that the appellant had put it out of Smith's power to perform the very contract which the appellant himself had guarantied, and authorizing the respondent to deal with Smith upon that assumption. The price which the respondent was to pay to Smith for the lands was to apply primarily on Smith's promissory notes held by the respondent. And, upon the appellant's definite assurance that it would not be in Smith's power to comply with his contract, the respondent was not bound to continue his reliance on Smith's contract, as security for the payment of the notes. The respondent appears to have acted on the appellant's assurance, in cancelling Smith's contract. And the doctrine of estoppel applies too clearly for discussion.

It is wholly immaterial to the question, that the appellant refused to make title to Smith because Smith failed to pay him for the lands. When the appellant guarantied Smith's contract to the respondent, he assumed the alternative risk of Smith's breach of his agreement with himself to pay for the lands, or his own breach of his agreement with the respondent that Smith should convey them. The appellant had his elec-

tion between the two difficulties, in which he had voluntarily placed himself; he made his election, and must abide by it.

*Third.* It was claimed that, though Smith had failed to make the conveyance guarantied by the appellant, yet the appellant had offered to convey the same lands for a less price to the respondent; that the respondent had refused to accept them from him at any price; that the appellant had thus absolved himself from all liability on his first agreement; and that the respondent's refusal of the lands put it out of the appellant's power to keep his second agreement. The respondent's counsel replied to this position, that his client had an interest in taking title from Smith, which might have been his principal or sole object in making the contract with Smith, and which the appellant's offer did not reach: that is to say, payment of Smith's notes. And we cannot but regard this as a complete answer. Had the appellant desired to exonerate himself from his guaranty of Smith's contract, by performing it himself, he was bound to put himself absolutely in Smith's place, not only to convey the same title to the same lands, but also to receive the same payment for them. Had he offered to accept Smith's notes in payment *pro tanto*, with no liability of the respondent over, it might have raised a grave question, whether the respondent could recover on the agreement, if at all, more than nominal damages. But he made no such offer; and the respondent could well reject the offer which the appellant did make, without impairing his right of recovery.

II. The measure of the respondent's right of recovery is a much more difficult question than the right itself.

Had the pleadings and proofs disclosed the circumstances under which the contract between the parties was made, their respective relations to the subject matter and to each other respecting the subject matter, we might have been better able to put a construction on the contract, and the construction might have been more satisfactory to ourselves. Such evidence is always admissible, not to vary the terms of a written con-

tract or to explain patent ambiguities in it, but to facilitate the construction of terms obscure in themselves, in relation to the subject matter, on the face of the contract. The rule is well stated by Prof. Greenleaf. " As it is a leading rule, in regard to written instruments, that they are to be interpreted according to their subject matter, it is obvious that parol or verbal testimony must be resorted to, in order to ascertain the *nature and qualities of the subject* to which the instrument refers. Evidence which is calculated to explain the subject of an instrument, is essentially different in its character from evidence of verbal communications respecting it. Whatever, therefore, indicates the nature of the subject, is a just medium of interpretation of the language and meaning of the parties in relation to it, and is also a just foundation for giving the instrument an interpretation, when considered relatively, different from that which it would receive if considered in the abstract." And again: " It is only in this mode that parol evidence is admissible (as is sometimes but not very accurately said), *to explain written instruments;* namely, by showing the situation of the party in all his relations to persons and things around him, or, as elsewhere expressed, by proof of the surrounding circumstances." 1 Greenl. Ev., §§ 286, 288. See *Ganson v. Madigan,* 15 Wis., 144; *Prentiss v. Brewer,* 17 id., 635; *Rockwell v. Ins. Co.,* 21 id., 548; *Sawyer v. Ins. Co.,* 37 id., 503.

But in reference to the Fox and Weston lands and to the balance of the credit for them for which ten thousand dollars ·is credited upon the appellant's notes and mortgage held by the respondent, and to the previous relations of the parties thereto, and to the previous relations of the parties to each other in respect thereof, the record before us is wholly silent. The language used is more or less obscure; but we must put the best construction we are able upon it, as it appears nakedly upon the face of the contract.

The contract recites that the respondent has given credit to

Lyman vs. Babcock.

the appellant on the appellant's notes and mortgage, for $10,000, being the balance of credit for certain lands conveyed to the respondent by Fox and Weston. As we have already endeavored to explain, we are without any light, *dehors* the contract itself, as to the nature of the credit for the Fox and Weston lands, or how the credit arose, or why the appellant should have credit for lands conveyed to the respondent by Fox and Weston, or as to the appellant's relation to Fox and Weston in the premises, or as to the mutual relations of the parties in respect of the Fox and Weston lands and the consideration payable by the respondent for them. The word *credit* appears to be repeated in the same sense in which it is first used; and appears to imply that, for some unexplained cause, upon some unexplained relation of the parties to each other in respect of the Fox and Weston lands, the respondent recognized some unexplained right of the appellant to credit for a balance of $10,000, for those lands. The word credit, in this use, implies a right of the person credited, to that for which he receives credit. One does not receive credit for what is due to a stranger. The recital implies some privity of the appellant to the lands conveyed by Fox and Weston, or to the consideration payable for them. Surely the appellant would not be credited by the respondent for money payable to Fox and Weston, unless the respondent recognized some legal or equitable right of the appellant to the credit. The credit on the notes and mortgage was certainly a credit going to the appellant; and so, by all rules of construction, we must hold the credit for the Fox and Weston lands to be. The two credits are concurrent and dependent; the credit on the notes and mortgage being given because of the credit on the lands; the credit on the lands being satisfied by the credit given on the notes and mortgage. It appears to be a wholly unwarranted construction to divorce the two credits; or to reject the credit for the lands, and to assume that the credit on the notes and mortgage operated as a payment of the sum

mentioned, by way of original and independent consideration for the contract; the appellant's agreements being the sole consideration for the credit given to him on his notes and mortgage. Had such been the case, we can see no purpose in any mention of the credit for the Fox and Weston lands, except to obscure what would have been otherwise clear; except to give to the recital a meaning which it was not intended to bear, a meaning inconsistent with the transaction. The credit for the Fox and Weston lands could not well have entered, into the minds of the parties, in framing the contract, unless it was within their intention and the subject matter of their contract. Had it not been so, the recital would naturally have been confined to the payment of the $10,000, by credit on the notes and mortgage, as the consideration of the appellant's contract; and it is inconceivable that the parties should have intruded into the recital a matter irrelevant to the transaction, and inconsistent with it.

It is true that the contract goes on immediately to recite that the $10,000 will be due to the respondent upon contingencies stated; but the contingencies stated are the failure of the appellant in his agreements; the recitals substantially covering the whole of the agreements to which they lead. The contract recites the transaction, consideration and agreements, and then proceeds to the formal agreements themselves; connecting the recitals with the formal part of the contract by the words, "now therefore." So that the recital that the sum will be repayable to the respondent upon the contingencies stated, does not aid the construction of the consideration, but merely anticipates by recital the appellant's agreement to repay.

It was argued by the respondent's counsel, that the proper construction of the recital is, that there was controversy between the parties, the appellant claiming, and the respondent denying, credit for the balance of the Fox and Weston lands; and that the agreement was a settlement of the controversy.

We cannot say that such was not the case. We can only say that there is nothing on the face of the contract indicating any such controversy or settlement; and that if such was the truth of the transaction, the contract was effectually drawn to hide it. It is useless to consider what would be the effect upon our judgment of the construction suggested by counsel. It is enough to say that it is wholly conjectural and unwarranted by the language of the contract.

We have given the only construction which we are able to the language of the contract. And we cannot hold that the sum was credited to the appellant, solely as consideration for his agreements. On the contrary, we must hold that the credit to the appellant on his notes and mortgage extinguished another credit to which he appears to have been entitled; and that his agreements were collateral to the credit given to him, and to the time and manner of giving it; the credit itself resting on another and independent consideration.

Had the respondent paid or credited the $10,000 solely as consideration for the appellant's contract, it would certainly have been most reasonable that the appellant should repay the $10,000, upon his total failure to comply with his contract. *Yenner v. Hammond,* 36 Wis., 277. But such does not appear to be the case; and we have to determine whether the $10,000 which the appellant agrees to pay or repay, is to be held as a penalty or as liquidated damages. The contract itself is silent on the subject; and perhaps its silence is immaterial. *Yenner v. Hammond, supra.* But certain it is that the appellant positively agrees that, either upon the respondent's failure to obtain title to the undivided 12,000 acres of land from Smith, or, obtaining it, upon the respondent's failure in the right of selection, the credit given to him on his mortgage should be cancelled, or the sum repaid.

It may be assumed that the respondent's damages would be uncertain, either upon his failure to obtain title from Smith, or, obtaining it, upon his failure in the right of selection.

But it is very difficult to believe that his damages in both cases would be equal; for that would assume that he had no substantial interest in his contract made with Smith some months before this contract with the appellant, and apparently not in view of it, for the purchase of the undivided interest for $24,000. The lands may not have been worth the price. But they must be taken to have been worth something; and if the respondent had agreed to pay Smith more than they were worth, he had still the interest upon which his counsel insisted, in the payment of Smith's notes. If by reason of the price or otherwise he had no substantial interest in the contract with Smith, it appears impossible that he could suffer damage of $10,000, upon Smith's failure to fulfill it. If he had such an interest in it, it appears impossible that he should suffer equal damage by Smith's total failure to fulfill it, and by his own failure in the right of selection only, upon Smith's fulfilling it. In either case, it is perhaps difficult to believe that $10,000 is a reasonable liquidation of his damages in respect to lands which he bought from Smith at $24,000, and afterwards refused to buy from the appellant at $12,000.

But this is not all. The sum payable by the contract, upon either of these two contingencies alike, is, by the terms used, equally payable upon Smith's total or partial failure to convey, and upon total or partial failure in the right of selection. There is perhaps a little uncertainty in the contract, whether the right of selection applies to the whole 12,000 acres or to 6,000 only. But this does not not affect the principle. Indeed, if the right of selection be limited to 6,000 acres, that would increase the inequality of the rule of damages in the contract, in the two contingencies. But certain it is that, if we should hold the $10,000 to be liquidated damages, they would be equally recoverable upon Smith's total failure to convey, and upon his failure to convey any part of the lands; and upon the respondent's failure in the right of selection, under the appellant's contract, either of the whole or of any part of the lands.

It appears very manifest that, if the $10,000 be not considered as a penalty, the measure of damages under the contract is equal upon any failure, total or partial, of the appellant's contract, without regard to the unequal damages of the respondent, in different contingencies of failure; and that it might well have operated as a gross oppression of the appellant, by applying equally to the least measure of failure, and to total failure, on his part.  So the contract provides.  *Kemble v. Farren*, 6 Bing., 141.  Doubtless the contract might have well given the whole sum as liquidated damages for the breach of the whole contract, and some designated part of it, or some rule of distribution, for each partial breach.  The difficulty is that it does not.  As it is, it appears to us that it would be great injustice and violation of sound principle to hold the sum designated as liquidated damages for any breach of the contract, and not as a penalty.  This, nothing short of a uniform current of authority would probably induce us to do.

" The subject matter of the contract, and the intention of the parties, are the controlling guides.  If, from the nature of the agreement, it is clear that any attempt to get at the actual damage would be difficult, if not vain, then the courts will incline to give the relief which the parties have agreed on.  But if, on the other hand, the contract is such that the strict construction of the phraseology would work absurdity or oppression, the use of the term liquidated damages will not prevent the courts from inquiring into the actual injury sustained, and doing justice between the parties."  Sedgwick on Dam., 493.

Where the sum is agreed to be paid for a single breach of the contract, and the damages are wholly uncertain in amount, and the sum is not apparently disproportionate to the injury, all the cases agree that the sum should be recovered as the damages liquidated by the parties themselves for the breach.

Where the sum is agreed to be paid for any of several breaches of the contract, and the damages resulting from any

are certain in amount, or there is a fixed rule for measuring them, all the cases agree that the sum should be held as a penalty, and the recovery limited to actual damages.

Where the sum is agreed to be paid for any of several breaches of the contract, and the damages resulting from all of them are uncertain, and there is no fixed rule for measuring them, but the breaches are apparently of various degrees of importance and injury, the cases are conflicting in the rule, whether the sum should be held as a penalty or as liquidated damages.

On principle, we are very clear that in such a case the sum should be held as a penalty. For it appears to us that it would be as unjust to sanction a recovery of the sum agreed to be paid, alike for any one trivial breach, or for any one important breach, or for breach of the whole contract, as it would be to sanction such a recovery equally for damages certain and uncertain in their nature. The rule holding the sum to be a penalty in the latter case, goes upon the injustice of allowing such a recovery for a less amount of actual damages ascertained or readily ascertainable. And we cannot but think that there is like injustice in allowing such a recovery equally, in cases of damages uncertain indeed, but manifestly and materially different in amount; equally for breach of part of the contract, and for breach of the entire contract. Such a rule would not only put the same value on a small part as on a large part, but would put the same value on any part as on the whole.

It would be unprofitable to review the cases upon this point. They are very numerous, and are fairly collected and stated by Mr. Sedgwick, Prof. Parsons and other text writers. The two authors named appear to differ materially in the conclusions drawn from them.

Says Prof. Parsons: "Let us suppose a contract between parties, one of whom, for good consideration, promises to the other to do several things, and then it is agreed that the

promisor shall pay, by way of liquidated damages, a large sum, if the promisee recover against him in an action for a breach of this contract. It must be supposed that this sum is intended and regarded as adequate compensation for a breach of the whole contract; for it is all that the promisor is to pay if he breaks the whole. It would, of course, be most unjust and oppressive to require of him to pay this whole sum for violating any one of the least important items of the contract. But such would be the effect, if the words of the parties prevailed over the justice of the case. The sum to be paid would, therefore, be treated as a penalty, and reduced accordingly, unless the agreement provided that it should be paid only when the whole contract was broken, or so much of it as to leave the remainder of no value; or unless the sum agreed upon was broken up into parts, and to each breach of the contract its appropriate part assigned; and the sum or sums payable came in other respects within the principles of liquidated damages." 1 Parsons on Con., 161.

This view of the rule seems to have been originally suggested by HEATH, J., in the leading case of *Astley v. Weldon*, 2 Bos. & Pul., 346. "Where articles contain covenants for the performance of several things, and then one large sum is stated at the end to be paid upon breach of performance, that must be considered as a penalty. But where it is agreed that, if a party do such a particular thing, such a sum shall be paid by him, there the sum stated may be treated as liquidated damages." Many years later, the same view of the rule was repeated by TINDAL, C. J., in *Boys v. Ancell*, 5 Bingham's N. C., 390: "This brings the case within the principle of *Davies v. Penton* and *Kemble v. Farren*, where the rule was laid down, that liquidated damages could not be reserved on an agreement containing various stipulations, of various degrees of importance, unless the agreement specified the particular stipulation or stipulations to which the liquidated damages were to be confined."

We are not unmindful that this application of the rule has been severely criticised and often disregarded both in England and this country. But its eminent justice and soundness of principle commend it none the less to us. Surely a court of equity would not feel justified in specifically enforcing the contract before us, by canceling the whole credit given on the appellant's mortgage, if it should be made to appear that the respondent had suffered no damage by the appellant's breach; that the lands were not worth the price fixed in Smith's contract; that Smith's notes had been otherwise paid or secured; and that the appellant's breach of contract was a positive gain, not loss, to the respondent. Yet the rule of holding fixed sums as penalties, and limiting recovery under them to actual damages, is derived from courts of equity. 1 Parsons' Con., 157. And we take it to be now universally recognized, that what a court of equity will hold as a penalty, a court of law will also.

The rule, as we have stated it, not only appears to us necessary to prevent injustice and oppression, but to have been already adopted by this court.

In *Pierce v. Jung*, 10 Wis., 30, on a general review of the doctrine of penalty and liquidated damages, the court uses this language: "Thus, in *Kemble v. Farren*, the agreement contained some provisions upon the breach of which the damages would have been wholly uncertain, and incapable of any definite ascertainment. But it also had others of a comparatively unimportant character, one of which was that the plaintiff should pay the defendant £3 6s. 8d., every night the theatre was open. And there was a clause that, upon the failure of either party to fulfill his agreement, *or any part thereof*, he should pay to the other £1,000, which was expressly declared to be 'liquidated damages, and not a penalty, or in the nature thereof.' Yet, notwithstanding this language, which the court admitted to be as explicit as language could be, they held it to be a penalty; because, by the very terms of the

agreement, it applied as well to a breach of the most unimportant provisions, where the actual damages were clearly ascertainable, as to those of a different character. As for instance, if the plaintiff had failed to pay the £3 6s. 8d., on any one night, he would, by the agreement, have forfeited the one thousand pounds; from which the court held that, notwithstanding the positive language to the contrary, the intention was to provide for a penalty. But this case, and all those of a similar character, lay great stress upon the point, whether, upon a breach of the agreement, the damages are capable of being readily and certainly ascertained. And they all admit that where such is not the case, that fact will have a controlling influence in determining that the intention was to provide for stipulated damages, and not for a penalty."

The precise question before us in this case came directly before the court in *Fitzpatrick v. Cottingham*, 14 Wis., 219; and the rule is thus authoritatively held: "The authorities upon this question are examined in *Pierce v. Jung*, 10 Wis., 30. It was there held, that where the damages were uncertain and incapable of definite ascertainment, the damages fixed in the contract would not be considered in the nature of a penalty, but might be recovered. But it was also stated, as the result of the authorities, that where, from the very nature of the provisions of the contract, it appeared that the actual damage might be accurately ascertained, and that it might be of trifling importance as compared with the amount fixed as stipulated damages, there it would be considered as a penalty. This case comes within that rule, and is very similar to that of *Kemble v. Farren*, 6 Bing., 141, which is commented on in *Pierce v. Jung*.

"By the terms of the agreement, as set forth in the complaint, the defendant was liable to pay the $1,000 on his failure, to 'perform all and *any* of the terms, conditions and agreements by him to be performed,' etc. Now the principal thing to be performed by the defendant was the payment of

money. By the terms of the agreement, he would have been liable to pay the $1,000 damages, if he had not paid the last 15 per cent. of the consideration as agreed. But the doctrine of liquidated damages is not applicable to agreements for the payment of money only. Sedgwick on Damages, 400, and cases cited.

" So the defendant was required to furnish materials as fast as they were needed, etc. If he had delayed one day beyond a reasonable time to furnish any part of the materials, he would, by the terms of the agreement, have been liable to pay the $1,000. The reasoning in *Kemble v. Farren* seems entirely applicable to this contract, and shows that it should be regarded as in the nature of a penalty. The court below should have instructed the jury, as requested, that the plaintiff could recover only his actual damages." See also *Laubenheimer v. Mann*, 19 Wis., 519, and *Yenner v. Hammond*, *supra*.

The rule as we have stated it, must therefore be taken as the settled law of this court; and is conclusive of the case before us. The court below charged the jury that if the appellant had not performed his contract, the respondent was entitled to recover the $10,000; that is, as liquidated damages. We hold that he was entitled to recover such actual damages only as he could prove.

*By the Court.*— The judgment of the court below is reversed, and the cause remanded for a new trial.