[No. 9791.   Department One. — April 30, 1888.]

# THE PEOPLE, APPELLANT, v. CENTRAL PACIFIC RAILROAD COMPANY OF CALIFORNIA, RESPONDENT.

CENTRAL PACIFIC RAILROAD COMPANY — INTEREST ON BONDS PAID BY STATE — ACT OF APRIL 4, 1864 — LIABILITY OF RAILROAD. — The interest paid by the state of California on the bonds issued in pursuance of the act of April 4, 1864, to aid the construction of the Central Pacific Railroad Company, is not a loan by the state to the company; nor does the act, or the agreement executed by the company in pursuance thereof, give to the company any alternative right to perform the conditions of the agreement, or, at its option, to pay the amount paid by the state as interest on the bonds.

ID. — PENALTY — LIQUIDATED DAMAGES. — The amount mentioned in the act to be paid by the company upon its failure to perform any of the conditions imposed upon it by the act is to be treated as a penalty, and not as liquidated damages.

ID. — ACTION FOR BREACH OF CONDITIONS — PLEADING. — In an action by the state against the company to recover damages for the breach of any of the conditions to be performed by it, the complaint must specifically allege the facts constituting the breach, and the amount of damage sustained as the result thereof.   Tested by this rule, the complaint in question *held* insufficient on the ground of ambiguity and uncertainty.

PLEADING — DEMURRER — ORDER SUSTAINING APPEAL. — Where a complaint is demurred to on several grounds, and the demurrer is sustained by the lower court, the judgment based on the order sustaining the demurrer will be affirmed on appeal, if any of the objections raised by the demurrer were well taken.   And this is so, although the lower court, in its opinion rendered on the demurrer, bases its order on erroneous reasons.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*William M. Pierson,* and *Attorney-General Johnson,* for Appellant.

*Garber, Thornton & Bishop,* for Respondent.

McKINSTRY, J. — A demurrer to the complaint was sustained, and plaintiffs declining to amend, final judgment was entered for the defendant, from which plaintiffs have appealed.

The complaint sets out the act of the legislature of April 4, 1864, "to aid the construction of the Central Pacific Railroad Company," etc.; and avers that on the fourth day of May, 1864, the defendant made, executed, and delivered an agreement in writing, as required by said act of the legislature, which alleged agreement is also set out at length. It also alleged that the state of California "has duly performed all the conditions mentioned in said act of the legislature by it to be performed," and has paid the interest on the one million five hundred thousand dollars bonds, as provided in the act; the aggregate of payments of interest being one million nine hundred and forty-two thousand five hundred dollars, and the last of such payments having been made December 31, 1882. The judgment prayed is for one million nine hundred and forty-two thousand five hundred dollars, and interest and costs.

The complaint also avers that since the approval of the act and filing of the agreement aforesaid, and during each and every year since said times, "there have been necessarily transported on and over the railroad of said defendant numerous public messengers of the state of California, and of the various counties of said state, and numerous convicts, and numerous public messengers in charge thereof, going and sent on and over the railroad of said defendant to the state prison of said state; and numerous lunatics, and numerous public messengers in charge thereof, going and sent on and over the railroad of said defendant to the state insane asylum of said state from the various counties and cities and counties of said state; and various materials, and various public messengers in charge thereof, transported on and over the railroad of said defendant for the construction of the state capitol building of said state; and various articles intended for public exhibition at the fairs of the State Agricultural Society of said state, transported on and over the railroad of said defendant.

"That at the date of the passage of said act of the legislature and of the execution of said agreement, and since, the said defendant was and has been the owner and in possession of the said south half of section 19, in township 11 north, of range 7 east, Mount Diablo meridian, referred to in said act of the legislature and said agreement, and it has been within the power and ability of the said defendant and its agents, at all times since the passage of said act, and the execution, delivery, and filing of the agreement aforesaid, to apply for, accept, and receive a patent from the United States of America for the lands and premises described in said act of the legislature and said agreement, and to execute, acknowledge, and deliver to the state of California a deed in fee-simple for the conveyance thereof.

"Nevertheless the plaintiff alleges that although often requested and required so to do, the defendant has willfully and designedly, during all of the time aforesaid, refused and neglected to transport or convey over its said railroad free of charge, or without any other compensation than as provided in said act, all or any of the public messengers aforesaid, or all or any of the convicts aforesaid to the state prison of said state, or all or any of the lunatics aforesaid going to the state insane asylum aforesaid, or all or any of the materials aforesaid for the construction of the state capitol building aforesaid, or all or any of the articles aforesaid intended for public exhibition at the fairs of the State Agricultural Society aforesaid, and has, although often thereunto requested and required, refused and neglected to apply for, or accept or receive, a patent from the United States for the lands and premises aforesaid, or to execute, acknowledge, and deliver to the state of California a deed for the conveyance thereof in fee-simple, or otherwise."

It is contended by appellants that the questions of "compensation" or of a "penalty" are utterly foreign to the issues herein; that the statute and its acceptance by

the defendant constitute a contract between the state and the defendant; the terms and conditions whereof fix the rights of the parties herein; that the covenants or promises on the part of the defendant, in consideration of payments by the state of interest upon the bonds, were to transport and convey, " at all times when required," all public messengers, convicts ordered to the state prison, lunatics sent to the insane asylum, materials for the construction of the state capitol, articles intended for exhibition at the fairs of the State Agricultural Society, and troops and munitions of war of the state, free of charge, and also within ninety days after receiving a patent therefor, to convey the land described, *or* to *repay* to the state the amount by it paid as and for interest upon the bonds mentioned in the act.

The proposition is, that the money to be paid by the state for interest on the bonds was, in effect, a loan by the state to the defendant, to be repaid in either one of two ways,—by doing for all time the things specially agreed to be done by defendant, or by paying back the money. It is claimed the promise of the defendant was in the *alternative;* the defendant having the option at any time to refuse to perform any of the things promised, and to pay the money advanced by the state in lieu of such performance.

But the language of the act does not bear out the suggestion that the money paid by the state for interest was a loan to the defendant. The act is entitled " An act to aid the construction of the Central Pacific Railroad Company, *and to secure the use of the same* for military and other purposes," etc. The preamble recites that whereas war exists, and Congress "has granted aid" for the construction of the Central Pacific railroad, which is insufficient to complete the road, etc.; and "whereas it is important in view of the present state of war that the railroad be constructed as soon as possible," etc.

Neither in the title nor in the preamble is there any hint that it was the intent to provide for lending money to the defendant, although the general language employed might be held to include "aid" in the form of a loan, did the body of the act clearly provide for it.

The first section of the act authorizes the defendant herein to issue bonds of one thousand dollars each, the interest on the first fifteen hundred to be payable at the state treasury. The second section provides for the levy of a tax to pay the interest on the fifteen hundred bonds. The fourth section begins: "The said *grant* to said company is made upon the express condition and in consideration that the said company shall and do at all times when required, from and after the passage of this act, transport and convey," etc. The fifth section appropriates the money to be paid as interest on the bonds. The fourth section also requires that the railroad company shall enter into an "agreement," promising to comply with the terms and conditions set forth in the act. At the close of the fourth section is the sentence, that in case the company shall fail or refuse to perform any of such conditions, "it shall be liable to repay to the state the amount which shall have been paid by the state under this act." The word "repay" purports a payment to the state of the moneys granted by the state, but does not of itself necessarily imply a promise to repay the moneys as moneys advanced by way of loan to the defendant. By the act, the state pledged its faith to pay, and provided for taxation to pay, the interest upon certain bonds; and defendant, by its acceptance and agreement filed, promised to carry public messengers free of charge, etc. The act does not provide for an agreement by defendant promising to repay the moneys advanced by the state. The liability of defendant to pay money arises entirely out of the defendant's acceptance of the benefits of the act, which fixes a penalty in case of default in the performance of these conditions,

XXVI. Cal.—3

which the defendant is to agree to perform by written agreement filed. True, the acceptance of the grant bound the railroad company by all the provisions of the act, including the provision for "repayment" in case of default. But the foregoing statement explains the nature of the defendant's obligations thus assumed.

The state grants, by appropriation, certain moneys to aid the construction of defendant's railroad; in consideration of the grant, the defendant promises to do certain things for the state, and for the benefit of citizens of the state. The money for interest is appropriated, and the recurring payments of interest are to be made, even though the company shall fail to perform any of the conditions on its part. In case of failure to perform, however, the company is liable in damages at least up to the amount previously paid by the state.

But the amount which may have been paid by the state is either an amount stipulated to be paid as damages, or it is merely a *penalty*. The contract on the part of the defendant is not in the *alternative;* it is not an agreement to perform the conditions, or, at its option, to pay the amount. The promise to carry all public messengers free of charge, etc., is an absolute promise. The distinct and separate clause of the statute, that "in case the said company shall fail and refuse," etc., does not give to the defendant the right at its election to pay the amount stated instead of performing the conditions by it to be performed. If by accepting the benefits of the statute the defendant became liable to pay a stipulated sum, it was to be paid only in case of default in the performance of conditions otherwise absolute. The defendant, like any other contracting party, had power to violate its contract and take the consequences. But it was not authorized by the terms of a contract (derivable from its written agreement or from that agreement and the statute) to pay an agreed sum, and thus discharge itself. (1 Sutherland on Damages, 477.) Had

the act provided that the defendant should have the choice to perform specific acts or to pay to the state the amount paid for interest, or that the defendant might pay the money in lieu of performing the other acts, the case might have been different. (*Slossen* v. *Beadle*, 7 Johns. 72; *McNitt* v. *Clark*, 7 Johns. 464.) But we think the statute cannot be construed to give such an election to the defendant.

The payment of interest is called in the statute a "grant." Although the money was not there actually paid, it was appropriated contemporaneously with the passage of the statute. In effect, the grant was in the present; the conditions were to be performed in the future.

That a loan, or mere advance in the nature of a loan, was not intended is rendered the more apparent, not only from the fact that neither of these terms is employed, but from the further circumstances that all the services were not to be performed for the state directly, and that there is no provision for credits in case of part performance, whatever the extent of such performance. Yet it must be presumed, the contrary not being alleged, that the defendant built the railroad within the times stipulated, and performed all other conditions which the complaint fails to allege it did not perform.

The state must rely upon the statute, and the defendant's "agreement" so far as it complied with the statute. They do not provide for, nor do they contemplate, that the defendant shall pay money unless it shall fail to do some of the acts by it to be done. As we have said, the act provides either that the sum stated shall be the stipulated damages, or that the sum stated is a penalty. In the latter case the plaintiffs are entitled to recover only the actual damages proved.

No doubt parties may liquidate, by stipulation in advance, the amount to be paid as damages. But conceding a contract between the state and defendant, the intention

of the parties is always material. The intention should be apparent to liquidate the damages in the sense of just compensation; the intention to measure the damages is not satisfactorily shown when the amount stated varies materially from a just estimate of the actual loss. (1 Sutherland on Damages, 481.) If the act of the legislature is to be interpreted as claimed by appellants herein, it was intended, in case the defendant failed or refused to transport free of charge a single public messenger, convict, or lunatic, or a single article intended for exhibition at a state fair, that it should pay all moneys paid out by the state under the act,—amounting, when this suit was commenced, to nearly two million dollars. It has been said that the real question in such cases is not so much the actual intention of the parties, as whether the sum is in fact in the nature of a penalty, and that this is to be determined by the magnitude of the sum in connection with the subject-matter. (*Jaqueth* v. *Hudson*, 5 Doug. 123.) But this is only saying that under certain circumstances the law will impute an intention to the parties not derivable from the ordinary sense of the words.

In many cases it had been held that the parties could not have meant what they have apparently said; for instance, where a number of things are stipulated to be done, it has been held that the parties could not have meant that a large sum should be payable, as liquidated damages, for a failure to perform one or more of them. (Keating, J., in *Lea* v. *Whitaker*, L. R. 8 Com. P. 74.) In such cases the lump sum is to be regarded as a penalty. (*Kemble* v. *Farron*, 6 Bing. 141; *Goodworthy* v. *Strutt*, 17 L. J. Ex. 226; *Betts* v. *Birch*, 28 L. J. Ex. 267; *Sparrow* v. *Paris*, 7 Hurl. & N. 599.)

The tendency and preference of the law is to regard a stated sum as a penalty, except where the actual damages cannot be ascertained by any standard. But where the damages which must result from the breach of a

single contract are uncertain in their nature, any stipulation which the parties may make ostensibly for the purpose of liquidating the damages should receive favorable consideration.

Where the sum is agreed to be paid for any of several breaches of contract, and the damage resulting from a breach of all of them are uncertain, and there is no fixed rule for measuring them, but the breaches are apparently of various degrees of importance and injury, the cases in this country are somewhat conflicting as to whether the sum should be held to be a penalty or as liquidated damages. "But," as said by Ryan, C. J., in *Lyman* v. *Babcock*, 40 Wis. 503, "on principle we are very clear the sum should be held a penalty. For it appears to us it would be as unjust to sanction a recovery for the sum agreed to be paid alike for one trivial breach, or for one important breach, or for breach of the whole contract, as it would be to sanction a recovery equally for damages certain or uncertain in their nature." (And see 1 Parsons on Contracts, 161.)   Mr. Sutherland says: "This is believed now to be the doctrine generally held: if a gross sum is stipulated to be paid for any failure to fulfill an agreement consisting of several parts, and requiring several things to be done or omitted, it is a penalty." (1 Sutherland on Damages, 525.) The statement is true, as we have seen, even where the actual damages are uncertain, if it appears that the damages resulting from one of the breaches may be great and from another small, since the inequality is logically certain.

But where, as in the case at bar, the sum is made payable for one breach and for many, for a breach attended with a small loss or a great loss, and the actual damages are easily computed, the inequality is at once seen; the stipulation as to a definite sum is so framed that it cannot possibly be construed to adjust the recompense to actual injury.

The sum mentioned and referred to in the act of the legislature is to be treated as a penalty, and not as liquidated damages.

Can the present case be treated as an action to recover damages for a breach of one or more of the conditions to be performed by the defendant?

At common law, where there was an agreement under seal containing a penalty the plaintiff could bring debt for the same, or covenant, and recover damages for a breach of a covenant. (*Martin* v. *Taylor*, 1 Wash. C. C. 1.) But after a judgment in an action of debt, if it appeared that the demand was not for damages liquidated, but was a penalty, the defendant could seek relief in equity. (*Perkins* v. *Lyman*, 11 Mass. 76; 61 Am. Dec. 158.) Courts of equity relieved against a penalty upon compensation, but when the covenant was to pay a particular liquidated sum, a court of equity could not make a new covenant for a man. (*Low* v. *Peers*, 4 Burr. 2228.)

Courts of law (everywhere) now administer the same equity to relieve from the penalties in other forms of contract as from those in bonds. (1 Sutherland on Damages, 481.) Under our system of pleading, if an amount is stipulated as liquidated damages in a contract, whether under seal or not, the plaintiff should sue for that amount, for such is the contract. And such (aside from the suggestion as to defendant's alternative promise) seems to be the theory of the present action. But where the sum stated is merely a penalty, a plaintiff must sue for the actual damage sustained, by reason of the breach of the particular condition or conditions he claims to have been broken. The allegation of a breach must be governed by the nature of the contract, but it must be distinctly stated. It should be assigned in the words of the contract, or in words co-extensive with the sense and effect of it. (*McLaughlin* v. *Hutchins*, 3 Ark. 213.) The statement of a penalty in a contract is of very little importance, its only consequence being

to limit a recovery of actual damages, so that no more, perhaps, can be recovered than the sum named in the penalty. In cases of penalty the penalty is not a debt; the recital of a contract containing the penalty is not the equivalent of an averment of damages caused by a breach of a condition of the contract, nor is a prayer for judgment for the penal sum an averment that the plaintiff has suffered damages in that sum by reason of the breach. It follows that each breach of a condition on the part of the defendants relied on should have been specifically assigned, and the damage sustained as the result of such breach should have been alleged.

The complaint avers that between the fifth day of May, 1864, and the 1st of January, 1883, there were transported numerous public messengers, etc. So far no breach. It further alleges that between said dates, on occasions not specified by date or otherwise identified or described, the defendant exacted fares (if *that* is alleged) of "numerous public messengers of the state, and of various counties and cities and counties," no one of such messengers being named, or his official character or agency given, and exacted fares for numerous convicts and lunatics, not named, for transportation upon portions of defendant's railroad,—not described; further, that defendant charged and collected freights (assuming so much to be averred) for the transportation of "various" materials for the state capitol, and for "various articles" for exhibition at the state fairs,— not specifying any of such materials or articles, or its point of shipment, or by whom shipped, nor stating that any of such articles was in fact exhibited at a state fair.

If the complaint in these respects were sufficient, the plaintiffs would be at liberty at the trial so prove any instance in which, during a period of more than eighteen years,—or at least, within the statutory period of limitation,—the defendant had collected fare for the transportation of any public messenger, convict, or lunatic, or

for any article "intended" for exhibition at a state fair. The code provides for no "bill of particulars" in such case, nor was defendant bound to move that plaintffs make their complaint more specific. The complaint does not inform the defendant that the plaintiffs will rely upon any particular omission or refusal, or omissions or refusals, to carry free, indicating it or them by any description which could enable the defendant to prepare to meet the case which might be made by plaintiffs at the trial. Nor is there any averment that the defendant has refused to carry all and every public messenger, etc.

We think the averments referred to are insufficient as an assignment or assignments of breaches of conditions. Beyond question they are "uncertain."

With respect to the land described in the statute, the defendant was to convey it to the state within ninety days after receiving a patent from the United States therefor. The complaint contains no averment that the defendant has received a patent for the land.

Though it avers no breach of the literal contract, does it set forth facts showing a substantial breach within the purpose and intent of the supposed contract? The complaint avers that the defendant has been the owner of the land since the passage of the act of the legislature. It may be argued that since it is the manifest purpose of the act and agreement that the state shall receive a good title from the defendant, it was the duty of defendant to convey the title which it had as "owner." But whatever may be the meaning of the averment last referred to, that it means that the *legal title* has been in the defendant is made uncertain by the language which immediately follows it, and is directly connected therewith. "It has been within the ability and power of the defendant at all times to apply for, accept, and receive a patent from the United States." This last is not an averment that the defendant has been in a position to demand, or could put itself in a position to demand, a patent. It

may be that, without fault of the defendant, its application for a patent would have been fruitless; the plaintiffs do not allege that it would have been effectual. Nor is there an allegation that the plaintiffs have suffered damage by reason of the failure of the defendant to convey to the state, either in the amount paid out by it for interest or in any sum. As we have seen, the defendant would not have been indebted to the state in the amount paid by the latter for interest, upon failure to secure a patent or to convey the land. The doctrine of nominal damages may sometimes be resorted to where there is a failure of *proof*, not where there is a failure of averment.

The attempted statement of a breach of a condition to convey the land within ninety days after receiving a patent therefor is ambiguous and uncertain.

It is unnecessary to decide whether, if the complaint had not been subject to demurrer in other respects, the general averment of performance of all the conditions mentioned in the act of the legislature would be sufficient under section 457 of the Code of Civil Procedure. It may, however, be proper to say here, that the provision in the statute that the defendant, "when required," shall transport free of charge, imposes on the state, or those made agents of the state, a special request or demand in each case that the person or article be carried free. It has been insisted the words of the statute are not the equivalent of "when required," or "demanded"; that they only mean when "necessary,"—when it is for the public interest, or, in a larger sense, the public convenience. But the scope and purpose of the act being considered, it could not have been contemplated that the defendant should become liable in case its officers or agents should charge a fare or freight, in ignorance of and without any notice that the man or article was of a class mentioned in the statute. So to hold would be unreasonable in itself, as it might set a trap for defendant, and would make its liability depend on an event not in the contemplation of the law-makers.

It has been said that "required" cannot mean "requested," because there was and has been no legislation providing any special mode by which a request can be made by or for the state. But effect must be given to the language of the act which provides for a request or demand. By accepting the act and executing the agreement the defendant consented to be bound by such reasonable request as is appropriate in the cases provided for. The defendant could disregard such reasonable demand only at its own risk, and would become liable on refusing to comply with it. Thus if one claiming to be a public messenger, or the convoy of a convict or insane person, shall demand free passage, the defendant must inform itself of his real character, and for the purpose of ascertaining it may adopt reasonable rules and regulations. Practically, there can be little difficulty in carrying out the intent of the statute. Of course the defendant, under pretense of an investigation, cannot avoid its duty, or escape responsibility by requiring unreasonable vouchers, or imposing conditions which will delay or interfere with the exercise of the right of a particular applicant.

The averment that a defendant, " although often requested," like the averment of a promise, is often made where the law implies a request or promise. It is an immaterial allegation. " In point of form there are in pleading two descriptions of request, one termed a special request, the other the *licet sæpe requisitus.*" (1 Chitty on Pleading, 16th Am. ed., 541.) Where the special request is not necessary, the *licet sæpe requisitus* is of no avail, and the omission of it will not vitiate the pleading. (*Quimby* v. *Lyon*, 63 Cal. 395.) This merely formal allegation cannot be substituted for a special request to be alleged and proved.

The objection that the complaint was ambiguous and uncertain was taken by demurrer, and the demurrer was sustained. The Code of Civil Procedure contemplates one demurrer to a pleading, in which may be taken any

or all of the objections enumerated in section 430. If a demurrer is overruled, it is a determination that the pleading is good as against all the objections to it; and if, on appeal, it appears that any of the objections was well taken, the judgment is reversed. On the other hand, if any one of the objections taken is valid, and the demurrer is sustained below, the judgment based on the order sustaining it will be affirmed. Where the order sustaining or overruling the demurrer is general, the rule cannot be questioned, and as a general order is alone contemplated by the code, any matter inserted in the order other than the decision for or against the demurrer is surplusage, and not to be regarded. In the case at bar the order is either a determination that the complaint is insufficient, or the issues of law made by the demurrer have never been determined. A decision in favor of the plaintiffs upon the supposed issues made by the objections other than the specific objection mentioned in the order cannot be implied. The party against whom an order is made sustaining a demurrer is not entitled to notice of the motive or reasoning which induced the judge to make the order. In considering the appeal from the judgment, we are to treat the order on demurrer as if it were itself directly appealable. In such case both parties could not appeal, since the party in whose favor the order was made would not be injured by it. When one of several objections to a complaint is held valid and the demurrer is sustained, and the plaintiff declines to amend, but stands upon the complaint as sufficient, he cannot be permitted to say here that an " opinion " of the judge below—or matter in the nature of an opinion inserted in the order—indicates that the judge made the correct order for a wrong reason. The question always is: Ought the demurrer to have been sustained?

Judgment affirmed.

PATERSON, J., and TEMPLE, J., concurred.