[Civ. No. 363. Fourth Appellate District.—April 9, 1931.]

MENTE & CO., INC. (a Corporation), Appellant, v. FRESNO COMPRESS & WAREHOUSE CO. (a Corporation), Respondent.

Harris, Willey, Griffith & Harris for Appellant.

Everts, Ewing, Wild & Everts, Dan F. Conway and T. S. Magee for Respondent.

LAMBERSON, J., *pro tem.*—Appellant, plaintiff in the action, is a Louisiana corporation, dealing in bags, burlaps, twines and supplies of similar nature at New Orleans. About October 3, 1925, it entered into a contract with respondent for the sale to the latter of four cars of rewoven jute patches and one car of second-hand patches at the price of 8 cents per pound, each car to be of a minimum weight of 30,000 pounds. The contract was negotiated and entered into in California by an agent of appellant and a manager of the respondent.

The contract provided as follows: "One car of each, ship at once, (see wire Oct. 1). Three cars jute patches to be ordered out before December 31, 1925. . . .

"Failing to receive timely shipping instructions or prompt payment, Seller at its option may ship approximately equal quantities monthly or declare this order cancelled either in whole or in part, and if instructions be not received for shipment of entire order during term herein fixed, Seller need not tender the goods nor put Buyer in default, but Seller may then or thereafter at its option either cancel this order or invoice entire undelivered balance and recover full purchase price therefor with interest at highest conventional rate from time goods should have been delivered, and may withhold delivery until full payment plus carrying charges of two per cent per annum from time goods should have been delivered until delivery made. Attorney's fees or other amounts expended by Seller in enforcing this order or any of Seller's rights hereunder shall be paid by Buyer. . . . Conditions of this order apply to goods hereby sold or any materials or components used in their manufacture; it is not guaranteed against decline, is

not subject to cancellation . . . '' Shipment was to be made to Calwa, California.

Two cars were shipped out and paid for. The president of respondent corporation, having first learned of the order during December, 1925, thereupon caused appellant to be informed that respondent could not use a greater quantity of patches than that already delivered, and that respondent would not accept any more. There was some correspondence between the parties up to January 15, 1926, in which appellant declined to cancel the contract. Respondent did not order any other cars out prior or subsequent to December 31, 1925.

On November 23, 1926, respondent by a new contract ordered one minimum carload of 30,000 pounds of patches at $7\frac{1}{4}$ cents per pound. The order contained the following recitals: ''This car substituted in lieu of car Rewoven Jute Patches due on contract of October 3, 1925.

''Carrying charges on the car of Rewoven Patches is waived.''

Conversations occurred between the president of respondent and appellant's agent in 1927, but nothing further appears to have occurred in connection with the transaction, until appellant under date of January 28, 1928, sent to respondent an invoice covering the two remaining cars of patches. The items of the invoice included the amount of the purchase price of $4,800, plus interest at eight per cent and carrying charges at the rate of two per cent from January 1, 1926, to January 31, 1928, making a total of $5,817.67 for the recovery of which sum plaintiff brought this action on March 8, 1929.

It was stipulated at the trial that appellant was at all times ready, able and willing to comply with all the terms and conditions of the contract on its part to be performed.

The trial court found that respondent notified the appellant to sell the undelivered cars in the open market and that it would pay the difference between the resale price and the contract price, but that appellant refused so to do. It also found that appellant did not ship or tender or deliver either of the two cars, that no delivery was ever made to respondent and that the title to the two cars of patches never vested in respondent and that appellant retained title to the same; that there was at all times an active market for

the patches at New Orleans and at the point of delivery, and appellant could have resold them and would have suffered no loss after receiving notice from respondent that it refused to receive the remaining cars.

From judgment for the defendant plaintiff appeals.

Appellant stands strictly upon the contract and contends that it is entitled to the full purchase price, while respondent urges the purchase price was not due because title to the property had not passed, and further, that the contract was unlawful because it falls within the provisions of sections 1670 and 1671 of the Civil Code.

The evidence supports the findings of the court, which have been recited, and particularly, the finding that title to the patches did not pass to the buyer. The fact that the appellant accepted a new order on November 23, 1926, for one carload of patches, as a substitute for a car previously ordered, strongly indicates that the appellant held the patches which had not been accepted, in its own right and not for the use of the respondent.

 In the absence of contract, ordinarily, the vendor of personal property, upon the refusal of the vendee to take the property and pay the agreed price therefor, may resort to either one of three remedies, viz.: (1) Standing on the sale, the vendor may retain the property for the vendee and sue for the purchase price; (2) Acting as the agent of the vendee the vendor may resell the property, and then sue to recover the difference between the contract price and the price obtained on the resale; or (3) The vendor may treat and keep the property as his own, and recover from the vendee the difference between the contract price and the market price at the time and place of delivery. But in a case where the title to the property has not passed to the vendee, the vendor, upon a breach of the contract, has no cause of action for the contract price. In such case, he is compelled to recoup his loss, if any, by an action for damages founded upon a breach of the vendee's contract to accept and pay for the property. (*Cuthill* v. *Peabody*, 19 Cal. App. 304 [125 Pac. 926], citing sec. 3311, Civ. Code.)

In the instant case, however, the parties have entered into a contract which provides in substance that in the event of default on the part of the buyer, the seller need not tender the goods or put the buyer in default but may at its option

invoice the entire undelivered balance and recover the full purchase price therefor. The question immediately arises: What is the legal effect of such an agreement?

Section 1670 of the Civil Code provides: "Every contract by which the amount of damage to be paid or other compensation to be made for a breach of an obligation is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section." The next section, 1671, provides: "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

The Civil Code in section 3274 provides: ".As a general rule, compensation is a relief or remedy provided by the law of this state for the violation of private rights, and the means of securing their observance; and specific and preventive relief may be given in no other cases than those specified in this part of the Civil Code."

Under the title of "Compensatory Relief" the Civil Code in section 3281 says that "every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages". The term "damages" describes the monetary recovery which courts assess for a legal wrong of a private character. Primarily it involves the idea of compensation. It has been said that there is no impropriety in designating as "damages" the amount of money recovered in any judgment in the light of the language of section 3281 of the Civil Code (*Keyes* v. *Moy Jim Mun*, 136 Cal. 129 [68 Pac. 476].)

It is a fundamental rule that the determination of the meaning of a contract depends, in each case, upon the intent of the parties as evidenced by the entire agreement construed in the light of the circumstances under which it was made (*Nakagawa* v. *Okamoto*, 164 Cal. 718 [130 Pac. 707]). In the case *Anaheim Citrus Fruit Assn.* v. *Yeoman*, 51 Cal. App. 759, at page 761 [197 Pac. 959, 960], it was said:

"Aside from any provision of statute, it has long been held under decisions having there basis in the common law that a contract is not enforceable where a sum of money as

a penalty is provided to be paid in the event of a breach, and where the sum fixed has no reference to, and finds no support in, the amount of actual damage sustained by the complaining party. (Anson on Contracts, par. 347.) The effort of the law has always been to work the equitable result that for the breach of a simple contract obligation there shall be cast upon the delinquent party a liability to respond to such damages only as will furnish reasonable compensation for the injury done. Hence it has been held that a penalty, so stated to be and answering to its definition strictly, is never recoverable, but that the party shall be remitted to his remedy for compensatory relief.''

█ In the event that the provisions of a contract bring it within the meaning of section 1670 of the Civil Code, the parties cannot overcome the objection by the employment of language of different import in the contract itself because such provisions are expressly declared to be void. (*Knight* v. *Marks,* 183 Cal. 354 [191 Pac. 531]; *Green* v. *Frahm,* 176 Cal. 259, 262 [168 Pac. 114].) The policy of the law in California, aside from the provision of the Civil Code, is well established. In the case of *Biescar* v. *Pratt,* 4 Cal. App. 288 [87 Pac. 1101], it was held that the remedies of the vendor of personal property are clearly defined in section 3311 of the Civil Code, and do not include the right to resell the goods at an advanced price, and to retain the purchase money paid on the contract, either as liquidated damages, or on any other ground.

In the case of *Rez* v. *Summers,* 34 Cal. App. 527 [168 Pac. 156], a lease provided that in case of default, the lessor should be entitled to retain all moneys paid by the lessee. The sum of $800 had been paid as rent in full for the last two months of the term. The court held that the case came within the provisions of section 1670 of the Civil Code, and that the lessor was not entitled to retain moneys in excess of the damage suffered by the lessor. An attempt to determine the amount of attorney's fees to be allowed upon the enforcement of a promissory note and in anticipation of the breach of the obligation is not enforceable (*Eastman* v. *Sunset Park Land Co.,* 35 Cal. App. 628 [170 Pac. 642]). A provision in a contract for the sale of land, for the retention by the vendor of a deposit made by the vendee, as liquidated damages is void (*Easton* v. *Cressey,* 100 Cal. 75

[34 Pac. 622]). In the case of *Boas* v. *Knewing*, 175 Cal. 226 [L. R. A. 1917F, 462, 165 Pac. 690], involving a contract for the conditional sale of an automobile, which provided for its return to the vendor in the event of default by the vendee in paying deferred installments of the purchase price, it was held that the vendor upon such default may either sue for the purchase price or for the property, but was not entitled to both the property and the purchase price.

Other cases in considerable number might be cited which establish the principle that the code sections were intended to secure a just compensation for injuries, when they can be readily ascertained, and to protect parties in those cases from improvident and oppressive contracts, although it is not the policy of the law to force a construction of a contract that will assign it to the prohibited class and thereby deprive a party of the benefit of his agreement.

The parties by their written stipulations cannot avoid an examination of the circumstances surrounding the transaction and if the facts do not support such stipulations, they cannot be enforced (*Stark* v. *Shemada*, 187 Cal. 785 [204 Pac. 214]). In the case of *Pacific Factor Co.* v. *Adler*, 90 Cal. 110, at page 120 [25 Am. St. Rep. 102, 27 Pac. 36, 38], the court said:

"Whether a contract is such that 'from the nature of the case' it would be impracticable or extremely difficult to fix the actual damage sustained by a breach thereof is a question of fact, which must be determined in each particular case; and for the purpose of determining this question the court must examine the attendant and surrounding circumstances under which the contract was entered into, as well as the terms of the contract itself. Parties cannot by their arbitrary agreement preclude such examination by the court, or avoid the provisions of the statute."

The rule stated in section 1670 of the Civil Code must be presumed to apply in all cases, unless the party seeking to recover upon the agreement shows by averment and proof that his case comes within the exception mentioned in section 1671. (*Los Angeles O. G. Assn.* v. *Pacific Surety Co.*, 24 Cal. App. 95 [140 Pac. 295]; *Stephens* v. *Daugherty*, 33 Cal. App. 733 [166 Pac. 375]; *Thomas* v. *Anthony*, 30 Cal. App. 217 [157 Pac. 823].) The party urging the matter must show by proper pleadings and com-

petent proof that the contract falls within the law permitting liquidated damages. This does not depend entirely upon the contract itself, but facts must be pleaded and proven from which the court can say as a matter of law, that the contract for liquidated damages is valid because from the nature of the case it would be impracticable or extremely difficult to fix the actual damage. (*McInerney* v. *Mack,* 34 Cal. App. 153 [166 Pac. 867]; *Kelly* v. *McDonald,* 98 Cal. App. 121 [276 Pac. 404]; *Pyle* v. *Benjamin,* 102 Cal. App. 691 [283 Pac. 372].)

■ From a reading of the contract in the case under consideration, it is obvious that it was the intent of the vendor that the obligations of the vendee to pay for the property described in the contract should be absolute, even to the point of keeping the property and compelling the vendee to pay the full purchase price. It is plainly a case where the parties contemplated that in the event of a breach of the contract the full purchase price should be the measure of the damage suffered by the vendor. In the light of the facts, the strict enforcement of the contract would lead to unconscionable and oppressive results and would render nugatory the salutary provisions of section 1670 of the Civil Code. The situation in this case is all the more subject to criticism because it affirmatively appears that at the time of the repudiation of the contract by the vendee, the market price of the goods involved, both at New Orleans and the point of delivery, was equivalent to the contract price, and that by allowing the matter to lie dormant for two years the damages were swelled to an excessive amount. To permit the vendor to retain the goods and at the same time recover the full purchase price would be to allow grossly excessive damages. In our opinion the contract falls within the inhibitions of section 1670 of the Civil Code, and the judgment of the trial court was therefore correct.

Our conclusion upon this point obviates the necessity of discussing other questions mentioned in the briefs of the appellant and the respondent.

It is ordered that the judgment be affirmed.

Barnard, P. J., and Jennings, J., concurred.