[Civ. No. 915. Fourth Appellate District.—September 28, 1932.]

F. M. WHITE, Appellant, v. THE CITY OF SAN DIEGO et al., Respondents.

[Civ. No. 916. Fourth Appellate District.—September 28, 1932.]

EVERETT PEET et al., Appellants, v. THE CITY OF SAN DIEGO et al., Respondents.

[Civ. No. 917. Fourth Appellate District.—September 28, 1932.]

LILLIAN P. JUDSON et al., Appellants, v. THE CITY OF SAN DIEGO et al., Respondents.

[Civ. No. 918. Fourth Appellate District.—September 28, 1932.]

DONALD A. MOORE et al., Appellants, v. THE CITY OF SAN DIEGO et al., Respondents.

[Civ. No. 919. Fourth Appellate District.—September 28, 1932.]

F. HERBERT JUDSON et al., Appellants, v. THE CITY OF SAN DIEGO et al., Respondents.

Wright & McKee for Appellants.

C. L. Byers, City Attorney, for Respondents.

SCOVEL, J., *pro tem.*—The above-entitled actions, all based on analogous facts, were consolidated for trial in the lower court. Judgment was entered in favor of defendants in all cases, from which judgments the several plaintiffs

have appealed. The appeals have also been consolidated for hearing in this court.

From the transcript, it appears that in 1926 the City of San Diego was contemplating the construction of a dam on the San Dieguito River, in San Diego County, for the impounding of water to be diverted from the watershed to the city and used for domestic purposes. It was therefore necessary that the City purchase or condemn the lands of the riparian owners lying below the dam site. Negotiations for the purchase thereof were entered into, and as a result the option agreements upon which these various actions are based were executed. With the exception of the amounts set forth in such agreements they are, for the purpose of these appeals, identical. The Prentice option is typical. It recites the City's contemplated construction of the dam, known as the Sutherland dam, the pendency of an application by the City before the department of water rights for the right to appropriate and divert water from the San Dieguito River for domestic purposes and the desire of the City to purchase the lands lying below the dam and riparian to the river in order that it might proceed with the project without prejudice to the owners of such lands. The contractual provisions then follow whereby for a consideration of $50 the City is given the option for one year to purchase the land described therein for $125,000, with the right to renew or extend the option for an additional two years upon payment of $25,000. Upon acceptance of the option and payment of the purchase price, the land owner agrees to furnish good and sufficient deeds conveying the land to the City, together with a certificate of title thereto.

Then follows the disputed portion of the option agreement, from which this litigation arises. Set forth in full it reads as follows:

"(a) It is understood by and between the Owner and the City that the City may, before it elects to exercise its option to purchase the Owner's land, as hereinbefore provided, begin the construction of the Sutherland dam, the construction of which would impound and divert from the San Dieguito River into another watershed a large portion of the storm waters that are accustomed to flow down the San Dieguito River and through the San Pasqual Valley toward the sea.

"(b) It is expressly understood and agreed by and between the Owner and the City that in the event the City should commence the construction of said dam and should not exercise its option to purchase the lands of the Owner the said Owner would sustain damages, but the exact amount of said damages is not ascertainable and the parties agree that from the very nature of the case it would be impossible and/or extremely difficult to fix the actual damage, and the City therefore promises and agrees that in the event it should construct the Sutherland dam and should not exercise its option to purchase the lands of the Owner, as in this contract provided, that it will pay to said Owner the sum of sixty-two thousand five hundred dollars ($62,500.00) as liquidated damages, and that said sum so determined as liquidated damages shall be due and payable from the City to the Owner on the day on which the said City, not having exercised its option to purchase the Owner's land, parts with said option and loses its right to purchase the lands of the Owner, as herein provided.

"(c) This obligation and promise on the part of the City to pay the aforesaid sum as liquidated damages, shall attach to and be binding upon the City upon the date on which it loses its option to purchase said lands, regardless of whether the Sutherland dam has been completed or whether water has actually been diverted."

The City did not purchase the lands during the first year of the option, but did pay the $25,000 for a two-year renewal or extension thereof. During the option periods, the City commenced the construction of Sutherland dam and proceeded with the work until the structure was approximately fifty per cent completed. At that time all work ceased and the dam was virtually abandoned, although it was left in such condition that it might be completed some time in the future.

Thereafter, the option periods provided for in the various agreements expired without the City either purchasing the lands or making any of the payments provided for therein and referred to as liquidated damages, as set forth in the above-quoted portion of the Prentice option. The various plaintiffs filed their claims with the City for the allowance of the specified amounts set forth as "liquidated damages"

in their respective options, which claims were refused and thereupon these actions commenced.

The complaints are substantially the same. They recite the voting of bonds by the City of San Diego for the construction of Sutherland dam, the issuance and sale of such bonds and the execution of the option agreements above described, copies thereof being attached to the complaints as exhibits. The complaints further allege with particularity that portion of the option agreement above quoted providing for the payment of liquidated damages in case Sutherland dam should be constructed and the City fail to exercise its option to purchase the lands described in the option. It is then alleged that by reason of the City's commencement and prosecution of the construction of said dam and its failure to exercise its option to purchase, the plaintiffs have sustained actual damage; that from the nature of the case and the existing circumstances at the time of the execution of such option agreement, it was impracticable and extremely difficult to fix the amount of damage that the owner of said lands would sustain by reason of the City's failure to exercise its option to purchase said lands, and by reason of its commencing and prosecuting the construction of said dam, specifically setting forth various reasons therefor; that by reason of the City's having commenced the construction of said dam and failing to purchase the lands described in such option agreement, the amount set forth therein as liquidated damages is due and payable as liquidated damages, for which amount judgment is asked. The answer of defendants is in the nature of a general denial, setting up certain special defenses which, however, are not involved in this appeal.

The court found that if the Sutherland dam should be completed, it would impound the greater portion of the flow of the stream and that the damage thereby occasioned plaintiffs, as riparian owners of land below the dam, would have been uncertain in amount and impracticable of ascertainment, but that the construction of such dam had not proceeded to a point where it in any way interrupted the natural flow of the stream, and that therefore none of the plaintiffs had sustained any actual damage thereby. The court further found that the execution of the agreements, giving the City an option to purchase plaintiffs' lands for

a three-year period, and the commencement of the construction of said dam, did interfere with and hinder the selling of said lands and the development and handling thereof by the plaintiffs during the life of said agreements; that the provision in each contract providing for liquidated damages in case the dam was commenced and further conditioned upon failure of the City to exercise its option was in truth and in fact a penalty and unenforceable. Judgment in favor of the defendants was thereupon entered.

A great portion of appellants' brief consists of an argument to the effect that the damages claimed are neither liquidated damages nor a penalty, but an agreement on the part of the City to pay the amount set forth as liquidated damages for the right and privilege of constructing Sutherland dam and not as damages that might be sustained by plaintiffs through the construction of the dam. They argue that the City had no right to construct a dam even upon lands riparian to the San Dieguito River which it might own where such construction was with the avowed purpose of diverting water from the watershed, without first purchasing or condemning the lands of lower riparian owners. (Citing *Collier* v. *Merced Irr. Dist.*, 213 Cal. 554 [2 Pac. (2d) 790].) That the option agreement, and particularly that portion of it hereinabove quoted, gave to the City the right, however, to construct such dam without such purchase or condemnation upon payment to plaintiffs of the respective amounts therein set forth although designated as liquidated damages; that a court is not bound by the terms used in an agreement, and even though the parties may designate the payment of moneys as liquidated damages, the court in construing the provision therefor will determine the same according to the fact and not be bound by the terminology used by the parties; that the agreement involved herein properly construed provides for the granting of a right with two alternatives as consideration therefor, that is to say, that the City was given the right or privilege of constructing the dam, and as consideration therefor could either purchase plaintiffs' properties or pay the amount stipulated in the agreement. (Citing such cases as *Smith* v. *Bergengren*, 153 Mass. 236 [26 N. E. 690, 10 L. R. A. 768]; *Johnston* v. *Cowan*, 59 Pa. 275.)

█ It will be noted that the theory of the pleadings upon which these actions are based is entirely that of a recovery of the various amounts as liquidated damages. The complaint in each action alleges with great particularity that the commencement of the dam and failure of the City to purchase plaintiffs' lands caused actual "damage"; that the amount of such "damage" is impracticable and extremely difficult to fix and that "the actual loss to the owner of said lands by reason of the City's failure to exercise its right to purchase the lands . . . and by reason of its commencing and prosecuting the construction of said Sutherland dam . . . was not ascertainable" for various reasons therein set forth. The complaint further alleges that by reason of such action on the part of the City the amount prayed for became due "as liquidated damages"; that plaintiffs filed with the City their various claims for damages "for the failure of said City to pay said sum agreed upon as liquidated damages". Considerable evidence was introduced at the trial upon the question of damage or injury to plaintiffs' lands. It is quite apparent, therefore, that the case was tried entirely upon the theory of a recovery of "liquidated damages" and not of moneys due in payment for a right or privilege granted. "The pleader is bound by the interpretation adopted by him and set forth in his pleading." (*Tennant* v. *Wilde*, 98 Cal. App. 437 [277 Pac. 137, 143]; *Silvers* v. *Grossman*, 183 Cal. 696 [192 Pac. 534].)

█ A plaintiff must recover, if at all, upon the issues framed by his pleadings and cannot for the first time ask for a reversal in the appellate court upon a theory not embraced within the pleadings nor within the issues tried. It is quite possible that had plaintiffs pleaded in the lower court the facts upon which they now ask for a reversal, defendant City might have set up other and additional defenses. It is sufficient for us to say that we are of the opinion the point now advanced by appellants cannot be considered. (2 Cal. Jur. 237; *Merrill* v. *Kohlberg*, 29 Cal. App. 382 [155 Pac. 824]; *United States Farm Land Co.* v. *Darter*, 42 Cal. App. 292 [183 Pac. 696].)

█ Appellants further contend, however, that the provisions for liquidated damages were valid and enforceable as such and that they were therefore entitled to recover the stipulated sums. It will be noted that the parties apparently

attempted to liquidate or fix in advance the damages that plaintiffs would sustain, not only by reason of construction of the dam, but also by reason of the failure of the City to purchase lands upon which it had been given an option. It might perhaps be conceded that the construction of a dam of the apparent size and magnitude of that herein involved would of necessity cause injury and damage to the riparian lands lying below the structure by impounding and diverting therefrom the flow of water to which such lands would be entitled as riparian to the stream upon which the dam was located. It might also be conceded that the amount of such damage would be "impracticable or extremely difficult to fix".

Civil Code, section 1671, however, only permits the parties to a contract to liquidate in advance damages which may be sustained by a *breach* of such contract. In the case at bar, the City did not agree to build a dam nor did it agree to purchase plaintiffs' lands. Any attempt to stipulate the amount of damages which plaintiffs might sustain through construction of the dam or failure to purchase their lands certainly was not the fixing of damages sustained by plaintiffs for the *breach* of an agreement, but rather for the performance thereof. Such is not within the purview of the statute. ▮ And in so far as the amount stipulated applies to the failure of the City to purchase plaintiffs' lands, it is difficult to see how the fixing of such amount to be paid by the City for its failure to exercise an option which, according to the very terms of the option, might or might not be exercised by it in its own discretion, could be construed as other than an attempt to compel the acceptance of such option by the City. The very nature of an option vests in the optionee the exclusive right to determine whether the option shall be accepted or rejected, and when with the giving of an option there is coupled a provision for an amount to be paid in case the option be not accepted, such additional provision is so inconsistent with the purpose and intent of the option, it necessarily follows that the fixing of such amount was intended as either a penalty for failure to perform in a certain manner or an attempt to insure such performance. It is but a penalty in either case, and as such is not recoverable. (8 Cal. Jur. 844.)

Certain findings of the court are also attacked. In finding No. 1, the court found that the City did not commence the construction of the dam by reason of or pursuant to the written consent of the plaintiffs contained in the option agreements. In finding No. 2, the court found that the damages which plaintiffs might have sustained, had the dam been completed, were a proper subject of agreement for liquidated damages, but that such damages were waived by plaintiffs and compensated for by the option money paid. In finding No. 3, the court found that the plaintiffs were not damaged by the partial construction of Sutherland dam. In finding No. 5, the court found that the mere commencement of the dam did not injure plaintiffs' lands in any manner, and in the nature of things could not cause any damage until the construction thereof reached the point where water was impounded or diverted by such dam, and in finding No. 6 found that any right given to the City to divert water from the San Dieguito River was dependent upon the consummation of the purchase of plaintiffs' lands and the completion of the dam. Having reached the conclusion that the amounts prayed for are not recoverable by reason of the invalidity of the provision therefor itself, any error in such findings becomes immaterial.

The judgments appealed from are affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 27, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 21, 1932.