[Civ. No. 3275. Fourth Dist. Dec. 13, 1944.]

OIL TOOL EXCHANGE, INC. (a Corporation), Respondent, v. JOHN E. SCHUH et al., Appellants.

D. R. Gustaveson, Dee Holder and Entenza & Gramer for Appellants.

Raphael Dechter and B. L. Hoyt for Respondent.

GRIFFIN, J.—This action, filed on December 17, 1939, was a complaint to foreclose a mortgage on certain real property in San Bernardino County, which mortgage was given by defendants Schuhs and Fidelity Foundation, Ltd., a trust, by Smith Williams and G. M. Lovejoy, as trustees, the then owners, as security for the payment of a promissory note in the sum of $15,204.07, payable to plaintiff Oil Tool Exchange, Inc., and executed on October 20, 1937, by defendants John E. Schuh and Blanche Schuh and payable in installments over a period of two years. No payments were made thereon except $2,500. Default of defendant Fidelity Foundation, Ltd., a trust, Smith Williams and G. M. Lovejoy, as trustees, and other party defendants, was duly entered. On November 21, 1941, the Schuhs and the trustees filed their answer and cross-complaint and admitted the signing of the note by the Schuhs and the mortgage by the named defendants, but denied that they were ever executed or delivered to plaintiff or that defendants ever received any consideration for them. They then alleged that on June 15, 1937, defendant John E. Schuh signed a pretended written guarantee of credit of "Louis C. Simmel Organization" to guarantee the payment of certain indebtedness to be incurred by that organization to plaintiff in a sum not to exceed $6,000; that Louis C. Simmel signed that guarantee as a coguarantor; that Simmel represented to defendant John E. Schuh that the object of the guarantee was to procure delivery to the organization, upon credit, of certain oil well casing for use in an oil well then being drilled by the said organization in Kern County; that Simmel misrepresented the facts to him as to the oil well and its ability to produce oil and led defendants to believe that Schuh would

never be called upon to make good his guarantee. It is then alleged that plaintiff corporation and Simmel had a secret agreement between them that they would never attempt to enforce the guarantee as to Simmel but would enforce payment thereof only from defendants Schuh; that on July 17, 1937, plaintiff, through its agent, agreed to cancel the guarantee; that in September, 1937, plaintiff here commenced an action in the Superior Court of Los Angeles County against defendant Schuh, alleging an amount of $13,722.11 due plaintiff by reason of indebtedness of Simmel to plaintiff and a guarantee by John E. Schuh of such amount. The unlimited, continuing guarantee signed by Schuh on June 15, 1937, guaranteed the payment of all of the Simmel organization debts "now, heretofore, and/or hereafter incurred or due" and was to remain in force until written revocation was given, and that such revocation should only affect indebtedness thereafter incurred. A similar guarantee was signed by Mr. Schuh as to any debts of the Simmel organization and/or "H.C.L. and associates" owing to plaintiff, but this guarantee had a limitation of $2,750. Simmel was not made a defendant in that action.

It is further alleged in the answer that defendant John E. Schuh was in such financial difficulty that in order to protect his entire holdings from threatened involuntary bankruptcy proceedings to be filed by plaintiff, he and his wife, acting under the threat, executed the note and mortgage set forth in this action; that he therefore paid $2,500 on it unwillingly and under threats of foreclosure.

As a further defense it is alleged that the principal sum of the mortgage had been fully paid and discharged by the payment by Louis C. Simmel or Elma C. Simmel of their respective indebtedness to plaintiff for the purchase of the oil well machinery.

In an amended answer it is alleged that on April 6, 1939, plaintiff sued Elma C. Simmel upon a similar unlimited continuing guarantee of the Simmel organization debts to plaintiff in the sum of $11,223.11 plus costs and attorney's fees. That guarantee was dated April 26, 1937. It is then alleged in the answer that Mrs. Simmel, in that action, interposed the defense of payment of the indebtedness by reason of the acceptance of the note and mortgage here involved; that plaintiff there contended that said note and mortgage was only held as security and was not accepted as payment; that the trial

court so held and rendered judgment against Mrs. Simmel for $14,589.97.

It is further alleged in the answer that the material sold to the Simmel organization by plaintiff was sold on a conditional sales contract and was later repossessed and returned to plaintiff. Defendants then pray that plaintiff take nothing; that the mortgage and note be delivered up and cancelled; for the return of the $2,500 paid; and for damages in the sum of $15,000.

The trial court found that the Fidelity Foundation, Ltd., was a trust; that John E. and Blanche Schuh were trustors and that they, as individuals, prior to November 17, 1939, transferred all of their title to the lands here involved to the trust and that they were the beneficiaries under it; that prior to the commencement of this action the trustees, in accordance with the terms of the trust, transferred all their title and interest as trustees in the trust to the Schuhs as tenants in common; that the Schuhs, for a valuable consideration, made, executed and delivered the promissory note here involved as well as the mortgage securing it; that Schuh made and executed. for a valuable consideration the guarantee in writing which had a limitation of $2,750 as well as the unlimited guarantee above mentioned; that Elma C. Simmel executed the guarantee in writing alleged in the answer but that the guarantee was executed as a ''separate independent contract from the guarant*ys*'' of Schuh. It then found that at the time of the execution of the unlimited guarantee of April 12, 1937, and concurrently therewith Schuh received from Simmel a $2\frac{1}{2}$ per cent participating royalty interest in a certain oil well which was being promoted for drilling by Simmel; that about the same time there was executed between the same parties an agreement in writing whereby Simmel agreed to transfer to Schuh a 20 per cent participating interest in oil to be produced on certain additional premises described, by which agreement Schuh personally agreed to pay for water string casing theretofore purchased by the parties from plaintiff, and to relieve Simmel from any liability thereon and to further finance the expedition for which Schuh was to have a one-fourth interest in every future well to be drilled on a particular leasehold.

The court found that the guarantee was an unlimited one and not only for the sum of $6,000 as claimed by defendants; that the action was brought in Los Angeles County on the

guarantees here involved; that attachments were issued on defendants' property and defendants, through their attorneys, in consideration of the release of the attachment, dismissal of the action, and the extension of time for payment of the indebtedness, executed the note and mortgage here involved as additional security; that subject to the execution and delivery of the note and mortgage here sued upon and at the request of defendants, plaintiff corporation executed and delivered to them an agreement of subordination whereby the said note and mortgage were to be subordinated to an assignment of a $3\frac{1}{2}$ per cent landowners' royalty interest in the real property described in the mortgage; that upon the payment of the $2,500 on the mortgage, plaintiff released from the lien of the mortgage certain real property belonging to defendants Schuh, and that they placed a new loan thereon in the sum of $5,000; that since the note and mortgage were executed defendant owners executed an oil and gas lease on the property here involved which was expressly made subject to the mortgage in question; that a wildcat well was drilled thereon but no gas or oil was discovered and the lease had been abandoned; that defendants were represented by their attorneys when the documents herein mentioned were executed; that they were aware of and had knowledge of the facts as set forth in their answer; that all of the tools sold by plaintiff to the Simmel organization were actually sold to it and not on a contract of sale; that plaintiff did cause an action to be brought against Elma C. Simmel in Los Angeles County on her guarantee of the indebtedness of Louis C. Simmel; that judgment went against her and that the trial court there found that the note and mortgage here sued upon were taken and accepted as additional security only and not in payment of the indebtedness; that subsequent to that judgment Elma C. Simmel went into voluntary bankruptcy; that she was insolvent and had no assets; that the judgment against her was listed as an obligation; that since the adjudication and the return of no assets, plaintiff herein and Mrs. Simmel entered into an agreement that upon the execution of a note for $300 the judgment against her would be satisfied and the bankruptcy proceedings dismissed; that judgment was, on February 24, 1941, satisfied (more than three years after the execution of the note and mortgage here involved.) Mrs. Simmel made no payment on the judgment and the $300 note still remains wholly unpaid.

Except as expressly found to be true, the trial court generally found all other claimed defenses to be untrue and rendered judgment foreclosing the mortgage and decreeing that defendants take nothing by their cross-complaint.

Defendants appealed and now argue first that there was, as a matter of law, no consideration for the execution of the note and mortgage; that if defendant John E. Schuh was already indebted on the guarantee his written promise in the form of a note to pay what he was then already obligated to pay would constitute no new consideration for the execution of the note and mortgage. We see no merit to this contention. The trial court properly found that the dismissal of the original action, the extension of time for payment, release of attachment and other agreements and the acts of forbearance constituted a sufficient consideration. (*Long* v. *Thompson,* 45 Cal.App.2d 161 [113 P.2d 698]; Civ. Code, §§ 1605-1614; *McClure* v. *McClure,* 100 Cal. 339 [34 P. 822]; *Fairchild* v. *Cartwright,* 39 Cal.App. 118 [178 P. 333].)

The attachment was levied on the property of the defendants. The record tends to show that at least a portion of the property was community property. The promise of the wife to pay the obligation is supported by ample consideration. (*Smith* v. *Hernan,* 40 Cal.App. 217 [180 P. 640]; *McDonald* v. *Randall,* 139 Cal. 246 [72 P. 997]; *First National Bank* v. *Williams,* 54 Cal.App. 537 [202 P. 164].) The execution of the mortgage by the trustees was supported by a consideration. The trust parted with all interest in the property subsequent to the execution of the mortgage and prior to this action. The mortgage being in writing, a sufficient consideration is presumed. (Civ. Code, § 1614.) Schuh and his wife, mortgagors, were the real beneficiaries under the trust and are now owners of the property as tenants in common. No personal judgment was ordered against the trust or the trustees. The consideration was adequate, and, as to them, it would seem that that question now is immaterial.

After the execution of the guarantee, which defendants claim was obtained by fraud, and after suit was brought thereon, with full knowledge of the claimed fraud, defendants executed the note and mortgage, secured a dismissal of the action based upon the guarantee, a release of the attachment, and extension of time within which to pay, obtained a release of part of the property from the lien of the mortgage, secured a subordination agreement for 3½ per cent landowners' royalty on the mortgaged premises, executed an oil lease fully

recognizing the mortgage herein sued upon, and in addition thereto made a payment of $2,500 on the note. It appears that the trial court was fully justified from the evidence in holding that there was no fraud or that there was a waiver of any claimed misrepresentation leading up to the execution of the note and mortgage, or claim of lack of consideration. (*Schmidt* v. *Mesmer,* 116 Cal. 267 [48 P. 54]; *Hutchins* v. *Security Trust etc. Bank,* 208 Cal. 463 [281 P. 1026, 65 A.L.R. 1059]; *Dool* v. *First National Bank,* 107 Cal.App. 585, 589 [290 P. 478].) The court's finding is binding on this court. (*Albaugh* v. *Mt. Shasta Power Corporation,* 9 Cal.2d 751 [73 P.2d 217].)

It is next argued that the satisfaction of the judgment against Elma C. Simmel, based upon her separate guarantee of the same account, had the effect of releasing Schuh from liability on his guarantee. We do not so construe its effect. The action against her was an entirely separate action and defendants were not parties thereto. Furthermore, she was insolvent and had no assets. The $300 note was never paid. Where the guarantee is joint and several, the failure to proceed against one coguarantor, or the release of one coguarantor would not necessarily release the remaining guarantor. (*Davenport* v. *Stratton,* 24 Cal.2d 232, 237 [149 P.2d 4].) The guarantee provides by its terms that the liability of the guarantor shall not be impaired by acceptance of notes or other evidences of debt by the plaintiff "until finally paid in cash" and that "this guarantee may be enforced either by a single proceeding against all of us, or any proceedings against us separately." A judgment is an evidence of debt. (*McLaughlin* v. *Alexander,* 2 S.D. 226 [49 N.W. 99].)

Defendants cite many cases to the effect that payment in full of a judgment by one of several persons against whom it operates extinguishes the judgment, citing such cases as *Ash* v. *Mortensen,* 24 Cal.2d 654 [150 P.2d 876], a malpractice case, where it was held that in some cases involving unliquidated tort demands, the payment of any sum in consideration of the release of one of several *joint tort feasors* will be presumed to have been made and accepted as full compensation.

The fundamental rule is that the bar does not arise from any particular form but from the fact that the injured party has actually received satisfaction. (*Urton* v. *Price,* 57 Cal. 270.) The defendants herein were not parties to the Simmel guarantee nor were they made parties to that action. It was

not an action respecting the rights of joint tort feasors but was strictly contractual, based upon separate and independent contracts of liability. Section 1543 of the Civil Code provides that "A release of one of two or more joint debtors does not extinguish the obligations of any of the others, unless they are mere guarantors. . . ." In the instant case there is no claimed release of one joint debtor but only of one of the guarantors.

In *Brown* v. *Pacific Coast Agency*, 53 Cal.App. 788, at 791 [200 P. 977], where the history and effect of that section is fully analzyed, it was said:

"But it may be said that the proper construction of section 1543 would seem to be that a release of one of two or more joint debtors does not extinguish the obligations of the others, unless they (the others not included in the release) are mere guarantors. Such construction would treat the section in harmony with section 2819 of the Civil Code, which specifies the manner in which a guarantor may be released. There is no reason why two or more joint guarantors (whose relation among themselves is of the nature of co-sureties) should be discharged by the release of one from a joint judgment on the guaranty. But if the principal on the original obligation is released by the creditor, then under the section the guarantor is discharged." (See, also, *Northern Insurance Co.* v. *Potter*, 63 Cal. 157; *French* v. *McCarthy*, 125 Cal. 508. [58 P. 154]; *E. A. Strout W. R. A., Inc.* v. *McCloud*, 29 Cal.App.2d 400 [84 P.2d 533].)

In *Dougherty* v. *California Kettleman Oil R., Inc.*, 13 Cal.2d 174 [88 P.2d 690], our Supreme Court reiterated the *joint tort feasor rule* but said that the rule has no application to joint contract debtors under section 1543 of the Civil Code. (See, also, *Forbes* v. *Board of Missions*, 17 Cal.2d 332, 338 [110 P.2d 3]; *Bee* v. *Cooper*, 217 Cal. 96 [17 P.2d 740].)

In *Elizalde* v. *Murphy*, 146 Cal. 168 [79 P. 866], it was held that the provisions of section 1543 of the Civil Code that "A release of one of two or more joint debtors does not extinguish the obligations of any of the others" are universal, and include all releases, however effected.

In fact, Schuh's relationship to Simmel was, it seems to us, more than a "mere guarantor" under section 1543 of the Civil Code. He was financially interested in the organization and in the venture when the credit was extended. On the execution of the guarantee he received a 2½ per cent participating royalty interest in a well then being promoted as

well as interests in other wells to be drilled. The satisfaction of the Elma C. Simmel judgment in the manner stated did not operate as a release of Schuh's liability under the guarantee. (*Pollak* v. *Staunton,* 210 Cal. 656, 666 [293 P.26]; *Brown* v. *Pacific Coast Agency,* 53 Cal.App. 788, 790 [200 P. 977]; *Northern Insurance Co.* v. *Potter,* 63 Cal. 157; *Sacramento County* v. *Bird,* 31 Cal. 66; *Williams* v. *Riehl,* 127 Cal. 365, 370 [59 P. 762, 78 Am.St.Rep. 60]; *Bank of America* v. *Duer,* 47 Cal.App.2d 100 [117 P.2d 405].)

It is conceded that the giving and acceptance of a promissory note is not the payment of a debt in the absence of an agreement to that effect. (*Hammond Lumber Co.* v. *Richardson Building & E. Co.,* 209 Cal. 82 [285 P. 851]; *Farmers etc. National Bank* v. *Peterson,* 5 Cal.2d 601 [55 P.2d 867].) Under the provisions of the written guarantee and the facts and circumstances of this case, the satisfaction of the Simmel judgment did not operate as a bar to the foreclosure of the mortgage here in question.

The defendants next argue that the default of the Fidelity Foundation, Ltd., a trust, and Williams and Lovejoy, trustees, having been entered by the clerk about two years before the filing of their answer and cross-complaint, rendered the decree of foreclosure erroneous because, it is claimed, the decree granted relief beyond that prayed for in the complaint, citing section 580 of the Code of Civil Procedure.

In the first place, the judgment does not transcend the relief sought in the complaint. Secondly, answers and cross-complaints were filed by those in default, without objection, and all parties proceeded to trial on the issues raised thereby. Such procedure constituted a waiver of the default of those defendants by the plaintiff and the acceptance of that waiver by those defendants. (*Madison* v. *Octave Oil Co.,* 154 Cal. 768 [99 P. 176]; *Nicholls* v. *Anders,* 13 Cal.App. 2d 440 [56 P.2d 1289]; *Hestres* v. *Clements,* 21 Cal. 425.)

Thirdly, the defaulting defendants admitted in their answer that the property involved no longer belonged to the trust but had been conveyed to the Schuhs. No prejudice resulted. (Civ. Code, § 2930.)

Other similar points raised for the first time on appeal will not be considered. (*White* v. *City of San Diego,* 126 Cal. App. 501 [14 P.2d 1062].) Since this action was submitted, after argument on appeal, defendants have made

two separate applications for leave to add additional documentary evidence to the record.

The first petition recites that certain letters, copies of which were set forth, "had become misplaced at the time of trial" and that petitioners did not discover them until after the case had been submitted on appeal. Their prayer is that those letters now be admitted as additional evidence in the case. One letter, dated August 26, 1937, is directed to Louis C. Simmel from attorney Dechter, counsel for plaintiff, and refers to an assignment of ten per cent of gross production from the Simmel lease as security for his indebtedness to one J. D. Rush, and refers to a certain superior court action in Los Angeles County based upon a note signed by Simmel and payable to Rush in the sum of $2,520. The letter then states that Dechter would take no further action in that case if Simmel would permit the income from ten per cent of the production per month, or a minimum of $200, to apply on said account, otherwise, he would proceed to judgment. Simmel signed the letter "Accepted." A copy of the complaint and default judgment taken on December 8, 1938, for $2,790.90 is also attached, as well as a copy of a letter dated November 12, 1937, from Schuh to Dechter, which recites that Schuh had employed Dechter also as his attorney to "prosecute my claim against Louis C. Simmel based upon . . . monies paid out by me on guarantees for the benefit of . . . Simmel." In this letter Schuh acknowledges that Dechter is also attorney for "Oil Tool Exchange, Inc., who have claims against me." It is claimed that plaintiff, through its attorney, Dechter, had intimate knowledge of Schuh's affairs and therefore this confidential relationship has a great bearing upon his claim of fraud and misrepresentation; and that the Rush claim was an item of, or a part of the judgment rendered against defendant under his guarantee.

Dechter, attorney for plaintiff, in reply recites that he was attorney in the Rush action and that the note there sued upon was given in payment of oil well equipment different from that set forth in the judgment here entered, and that there was no connection between the two transactions; that nothing was received from certain fire insurance policies referred to in one of the letters and that affiant at the time of trial was fully aware of the fact that he, Dechter, was employed by Schuh and the Oil Tool Exchange, Inc., and further that no point was made of that fact at the time of trial. If Dechter, who may have acted as attorney for both litigants at some

stage of the proceedings, has wrongfully taken advantage of his dual position, this is not the proper forum for rebuke nor can this question be raised for the first time on appeal when all parties had full knowledge of all the facts at the time of trial and failed to make any point of it at that time.

It appears from our examination of the other evidence here attempted to be presented that it is but cumulative and covers matters and issues previously presented at the trial of the action.

The second petition sets forth copies of two quitclaim deeds. One is from a Johann Schuh to Blanche Schuh, conveying one thousand fractions of expectancy in the property herein involved under the trust. John E. Schuh now claims in his affidavit that the signature to that deed is forged and that plaintiff knew it to be forged. Defendant Schuh does not recite how he knows it to be forged or how the admission of such claimed deed in evidence at this time would be material to the issues here presented.

He next claims that his signature on the other quitclaim deed, which was a quitclaim deed of Mr. and Mrs. Schuh's interest in the property, as trustees, to themselves individually, was placed on it believing at the time that he was signing a lease to the property. In view of admissions of ownership of the property in their answer, the written acknowledgment attached to the deed and the absence of a supporting affidavit of Mrs. Schuh, the merits of this offer, if material under any theory, is not very convincing.

The next offer refers to a letter dated March 16, 1943, from a man named Mills, directed to "Whom it May Concern," concerning some conversation he claims to have had with an agent of plaintiff. The letter is purely hearsay as to plaintiff.

Upon the showing made, we are not convinced that the evidence proffered, which is competent and material to the issues, would cause us to reverse or modify the judgment as given.

Applications to add additional documentary evidence denied. Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 8, 1945.