[S. F. No. 18603. In Bank. Feb. 6, 1953.]

HAL M. ATKINSON et al., Respondents, v. PACIFIC FIRE EXTINGUISHER COMPANY, Appellant.

Fitzgerald, Abbott & Beardsley and Charles A. Beardsley for Appellant.

Clark & Heafey, Thornton & Taylor and Augustin Donovan for Respondents.

SHENK, J.—This is an appeal from a judgment on a verdict for $97,437 in favor of the plaintiffs in an action for breach of contract. The questions presented are the effect of a prior default by the plaintiffs and the validity of a clause in a written contract fixing liquidated damages for breach of the contract.

On June 5, 1939, plaintiffs entered into a written "lease" agreement with the defendant company whereby the defendant agreed to install, maintain and operate a fire detection system in the plaintiffs' planing mill located in Oakland. The

system was designed to detect fires originating on the plaintiffs' premises and to automatically transmit signals to the Municipal Fire Alarm System of the City of Oakland. The term of the lease was 10 years, at an annual rental of $180 payable in monthly installments of $15 each. Paragraph 6 provides that in the event of default in payments, the defendant had the right to enter and remove the detection system. Paragraph 11 provides, "It is agreed by and between the parties hereto that the Lessor is not an insurer, and that the payments hereinbefore named are based solely on the value of the services in the operation of the system described, and in case of failure to perform such service and a resulting loss its liability hereunder shall be limited to and fixed at the sum of Twenty-five dollars as liquidated damages, and not as a penalty, and this liability shall be exclusive."

On July 8, 1948, while the system supposedly remained in operation, a fire was discovered in the plaintiffs' mill. The defendant does not contest the implied finding of the jury that the detection system failed to operate. The first alarm to the fire department was manually transmitted by one of the plaintiffs' employees, and there is evidence that fire fighting equipment arrived on the scene within two minutes after the alarm. Nevertheless the fire was then out of control and the planing mill was destroyed.

At the time of the fire the plaintiffs were in default in the payment of the monthly rental installments for June and July of 1948. During the trial the plaintiffs tendered and the defendant accepted these payments. There was evidence received without objection that throughout the period of the lease the plaintiffs' payments were occasionally in arrears. During most of 1946 payments were made a month or more after becoming due. On these occasions the defendant did not remove the detection system or discontinue the service nor was there any demand for strict compliance. Time had not been made of the essence of the contract. It was customary for the plaintiffs to pay the rental charges upon receipt of an invoice each month, and although controverted there was evidence that invoices were not received for June and July. The record furnishes substantial grounds for the application of the principle that where an obligee condones delay in periodic performance strict compliance thereafter is waived. (*Boone* v. *Templeman* (1910), 158 Cal. 290 [110 P. 947, 139 Am.St. Rep. 126] ; *Kern Sunset Oil Co.* v. *Good Roads Oil Co.* (1931), 214 Cal. 435 [6 P.2d 71, 80 A.L.R. 453].)

In view of the conclusion on the second phase of the case concerning liquidated damages it is unnecessary to discuss other points made by the defendant as to the form of the pleadings and the evidence with reference to the question of waiver. It is enough to say that the implied findings of the jury to the effect that the defendant's acceptance of overdue payments constituted a waiver of strict performance is supported by substantial evidence.

The principal contention of the defendant is that paragraph 11 of the contract is a valid provision for liquidated damages. This is the second phase of the case and the facts with reference thereto are undisputed. Civil Code, section 1670, states that a provision in a contract which provides for the amount of damages to be paid in the event of a subsequent breach of the contract is void, except as expressly provided in section 1671 as follows: ''The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.'' In the case of *Better Food Markets, Inc.* v. *American District Tel. Co., ante,* p. 179 [253 P.2d 10], this day decided, it was held that the question whether it would be impracticable or extremely difficult to fix liquidated damages is generally a question of fact and that the time for the determination of the question is the time of making the contract. It was also held in that case that the question becomes one of law where the facts are not in dispute and admit of but one conclusion.

In the present case the defendant claims that as a matter of law the jury could not properly have found that it was not impracticable or extremely difficult to fix actual damages when viewed from the position of the contracting parties under all the circumstances of the case existing at the time the contract was executed. The defendant points out that the detection system was intended to provide protection in case of a wide variety of fires. Some of them would be slow burning, as in a bed of sawdust, where a loss resulting from the failure of the detection system might be negligible. Other fires might result only in a pitted floor. Still others would immediately envelop the buildings in flames and result in a very substantial loss. Looking ahead the parties had no way of knowing what type of fire might occur after a particular failure of the detection system. The merit in the defendant's contention lies in the argument that in no event

could the parties have predicted what portion of the loss in any particular fire would be the proximate result of the failure of the detection system. It is true that in the event the detection system was functioning properly, there would probably be some damage by fire prior to the alarm; that further damage would have occurred before the fire fighting equipment could have been put into operation; and that the fire may have been of such a nature that the planing mill would have been consumed. The uncertain extent to which losses might occur viewed from the time of entering into the contract would make the task of fixing damages an extremely difficult if not an impossible one. There were additional factors to be considered, such as the weather conditions at the time of the fire, the season of the year, the success of the municipal fire fighting department in moving through traffic to the scene of the fire, and the presence of a full crew of employees or of only a night watchman on the premises. The factors involved were too many and too variable to permit of any certainty in predicting the extent of the losses directly attributable to the failure of the detection system with reference to a particular fire.

The liquidation clause here in question is in effect the same as that appearing in the contract considered in the companion case of *Better Food Markets, Inc.,* v. *American District Tel. Co., ante,* p. 179 [253 P.2d 10], above referred to. There the parties contracted for the installation and operation of a burglar alarm system which failed to operate. A substantial loss occurred. It was held, as here, that under the undisputed facts it was competent for the parties, at the time the contract was executed, to agree that it was impracticable or extremely difficult to fix in advance the actual damages that might result from a breach of the contract.

It is true that the validity of a clause for liquidated damages may be questioned on other grounds. ▮ One who relies upon a liquidation clause must show that the parties to the contract "agree therein upon an amount which shall be presumed to be the amount of damages sustained by a breach thereof . . ." (Civ. Code, § 1671.) ▮ As held in the Better Food Markets, Inc. case the amount agreed upon must result from a reasonable endeavor by the parties to estimate a fair compensation for any loss that may be sustained because of a breach. ▮ In the present case the defendant, for a compensation of $15 a month agreed to sound an early warning in case of fire; also to inspect and test the detection

system, and to maintain the equipment which was a part thereof. It was agreed that the payments were based "solely on the value of the services in the operation of the system" and that in the event of a failure of the defendant "to perform such services and a resulting loss." its liability was to be fixed at $25 as liquidated damages. It is to be noted that the contract does not limit the defendant's liability to losses resulting from fire, but rather to losses resulting from the defendant's failure to perform the contracted-for services, which services included inspecting, testing and maintaining the equipment as well as early warning in the event of a fire. These supplementary services were recognized in the contract to have value in themselves. They also included advantageous fire insurance rates where a detection system was kept in operation. A breach of contract by the defendant, then, might result in losses to the plaintiff other than fire losses, such as the cost to the plaintiff of maintaining the system where the defendant had failed to do so. From the standpoint of the defendant it was important that it should know the extent of its liability. From the small compensation received obviously it could not afford to assume responsibilities such as are assumed in the case of fire insurance coverage. On the other hand, while the plaintiffs could not and did not expect the defendant to furnish the security which fire insurance would afford, they were entitled to some compensation for the defendant's breach of contract although they had no way of knowing either the nature or the extent of a loss which might result after the defendant's breach. In view of the fact that neither party could foresee what the consequences of a breach would be, it was entirely reasonable for them to agree upon the stated amount which by the statute is then presumed to be the damages sustained because of a breach. These damages, as stated, might be greater or less than the amount agreed upon. The greater the difficulty encountered by the parties in estimating the damages, the greater should be the range of estimates which the courts should uphold as reasonable. (5 Corbin on Contracts, § 1059, p. 291.)

To hold that the parties have not entered into a valid contract for liquidated damages, it would be necessary to construe the agreement as one for a penalty wherein the amount agreed upon bore no reasonable relation to the losses the parties considered might be sustained. This cannot be said to be true in this case. The parties did stipulate that they agreed upon an amount "as liquidated damages, and not

as a penalty.'' While not conclusive, such a stipulation is entitled to some weight. (*Stark* v. *Shemada,* 187 Cal.. 785, 788 [204 P. 214] ; Restatement of Contracts, § 339(f), p. 544.)

The view here taken of the effect of paragraph 11 of the contract makes it unnecessary to consider arguments by the defendant wherein it attempts to uphold the validity of paragraph 11 as a provision for limited liability. The language employed is clear and unambiguous and does not attempt to limit damages but rather to provide a fixed amount in the event of a breach, whether the actual damages should be greater or less than that amount. Under all of the facts and circumstances of the case the provision is a valid clause for liquidated damages as authorized by statute.

The judgment of the trial court is modified by reducing the same to the sum of $25 without costs. As so modified the judgment is affirmed. Each party shall bear its own costs on appeal.

Gibson, C. J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

Paragraph 11 of the agreement between plaintiffs and defendant company provided that ''It is agreed by and between the parties hereto that the Lessor is not an insurer, and that the payments hereinbefore named are based *solely on the value of the services in the operation of the system described, and in case of failure to perform such service and a resulting loss its liability hereunder shall be limited to and fixed at the sum of* Twenty-five dollars as liquidated damages, and not as a penalty, and this liability shall be exclusive.'' (Emphasis added.) This provision is held by the majority of this court to constitute a valid and enforceable provision for liquidated damages.

Section 1670 of the Civil Code provides that a provision in a contract which provides for the amount of damages to be paid in the event of a subsequent breach of the contract is void, except as expressly provided in section 1671. Section 1671 provides that ''The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be *impracticable or extremely difficult to fix the actual damage.*'' (Emphasis added.)

It is conceded in *Better Food Markets, Inc.* v. *American District Tel. Co., ante,* p. 179 [253 P.2d 10], this day filed, that the question as to whether it would be impracticable or extremely difficult to fix liquidated damages is *generally* (see my dissent in that case) a question of fact. The jury here made that determination adversely to defendants, but this court has reversed that determination and decided, for itself, the question of fact and, in so doing, has once again usurped the function of the jury. This is another of the growing list of cases where a fact question has been decided by the trial court on demurrer, by a jury, again by the trial court on a motion for a new trial, and by the District Court of Appeal which affirmed the judgment (Cal.App.) 240 P.2d 651 and this court reverses. This practice—that of reversing findings of fact, and implied findings, made on conflicting evidence by the trial court and the jury—may very well at some later date be held to violate the constitutional provision (Cal. Const., art. I, § 7) which guarantees that ''The right of trial by jury shall be secured to all, and remain inviolate; . . .'' (See, also, 23 So.Cal.L.Rev., pp. 334-343.)

The person seeking enforcement of a liquidated damage clause has the burden of establishing that at the time the contract was entered into the nature of the agreement was such that it would be extremely impracticable or difficult for a court (or jury) to fix the actual damage in the event of a breach (*Rice* v. *Schmid,* 18 Cal.2d 382 [115 P.2d 498, 138 A.L.R. 589]). It is said that ''It is a question of fact *in each instance* whether the nature of the case is such that it would be impracticable or extremely difficult to fix the actual damage.'' (*Rice* v. *Schmid, supra,* 18 Cal.2d 382, 385.) (Emphasis added.)

It cannot be said with a clear conscience that in the event of damage by fire, it would be impracticable or extremely difficult to fix the amount of damages which might be suffered. It happens every day. Appraisers estimate the amount of damage which could be done by fire, or theft, to whatever type of business or residence is involved. Hence, it could easily have been ascertained how damages were to be computed in the event a fire occurred. It could have been computed what the damages would be in the event the fire occurred in the planing mill, in the stacks of lumber, in the office, the sawdust piles, or any other part of plaintiffs' property. There is a going price for lumber, repairs, etc. at any time of the year. In the Schmid case, *supra,* the price of flour was involved.

This court held that a provision for liquidated damages could not be upheld because actual damages involved could have been estimated in accordance with established principles. We said there that "In states like California, which have code sections governing the matter of liquidated damages, the courts cannot disregard the plain provision of the statute."

It is said in the majority opinion that "It is to be noted that the contract does not limit the defendant's liability to losses resulting from fire, but rather to losses resulting from the defendant's failure to perform the contracted-for services, which services included inspecting, testing and maintaining the equipment as well as early warning in the event of a fire."

It is not *essential* that any such thing be noted. It can as easily be inferred from the language used that the plaintiffs' purpose in installing the system was *only* the early detection of fire so that losses might be minimized. The agreement provides that the payments (rental) are based *"solely on the value of the services in the operation of the system described"* and that *"in case of failure to perform such service and a resulting loss,"* the defendant's liability should be limited to $25. (Emphasis added.) It surely is reasonable to infer from the language used that the only value of the system was the early detection of a fire; that "resulting loss" meant a loss from fire. But the majority concludes that a breach of this contract might result in a loss, other than from fire, "such as the cost to the plaintiff of maintaining the system where the defendant has failed to do so." This statement appears to me to be the height of absurdity. The maintenance of a fire detection system is a matter for experts; plaintiffs would have no way of knowing whether or not defendant had maintained it in proper working order until a test, such as a fire, occurred and until precisely the same results as here occurred.

The so-called liquidated damage provision here was for $25. This court in the Schmid case said that "A valid liquidated damage clause *must, of course, represent a reasonable endeavor by the parties to estimate fair compensation for the loss sustained.* (*Dyer Bros. Golden West Iron Works* v. *Central Iron Works,* 182 Cal. 588, 593 [189 P. 445]; 3 Williston, Contracts (1936), p. 2192, sec. 779; Restatement of Contracts, sec. 339; 10 Cal.L.Rev. 8, 14.)" (Emphasis added.) It is said in the majority opinion that "To hold that the parties have not entered into a valid contract for liquidated damages, it would be necessary to construe the agreement as one for a

penalty wherein the amount agreed upon bore no reasonable relation to the losses the parties considered might be sustained. This cannot be said to be true in this case." Upon what possible, rational basis can it be said that the sum of $25 bears *any* reasonable relation to *any* loss which the parties considered might be sustained? Considering the price of lumber in 1939 (the time the contract was entered into), it might almost be said as a matter of judicial notice that $25 would not be reasonable compensation for a bale of shingles! But the majority, to sustain its unsound position, must strain at gnats to find a reason why the sum of $25 might bear some relation to any possible loss! Note: "The defendant points out that the detection system was intended to provide protection in case of a wide variety of fires. Some of them would be slow burning, as in a bed of sawdust, where a loss resulting from the failure of the detection system might be negligible. Other fires might result only in a pitted floor. Still others would immediately envelop the buildings in flames and result in a very substantial loss. Looking ahead the parties had no way of knowing what type of fire might occur after a particular failure of the detection system." It is then said that weather conditions, the particular season of the year, and the traffic, and the number of plaintiffs' employees present would all have a bearing on the loss sustained. The evidence showed that the fire fighting equipment arrived at the premises within two minutes after the alarm had been given manually. Surely it would not have been difficult to determine in advance, from other fires in the vicinity, the type of service to be expected from the fire department, and as I have heretofore pointed out, the damage which might be expected from a fire in a particular part of plaintiffs' business.

The characteristic feature of a penalty is that it bears no relation to the actual damage which may be caused by a breach, but is arbitrarily fixed without any attempt to estimate the amount of injury (8 Cal.Jur. 847). "The tendency and preference of the law is to regard a stated sum as a penalty, except where the actual damages cannot be ascertained *by any standard.*" (*People* v. *Central Pacific R. R. Co.*, 76 Cal. 29, 36 [18 P. 90].) (Emphasis added.) Any provision by which money or property is to be forfeited without regard to actual damage suffered, calls for a penalty and is therefore void (*Fox Chicago R. Corp.* v. *Zukor's Dresses, Inc.*, 50 Cal.App.2d 129 [122 P.2d 705]; *Ebbert* v. *Mercantile Trust Co.*, 213 Cal. 496 [2 P.2d 776]; *Mente & Co.* v. *Fresno*

*C. & W. Co.,* 113 Cal.App. 325 [298 P. 126]; *White* v. *City of San Diego,* 126 Cal.App. 501 [14 P.2d 1062]). A provision for liquidated damages in a contract for the purchase of stock was held to be void since it was neither impracticable nor extremely difficult to fix the seller's actual damage for the purchaser's breach (*Porter* v. *Gibson,* 25 Cal.2d 506 [154 P.2d 703]).

In McCormick on Damages, page 606, et sequitur, it is said that courts are tending to adopt as the sole test whether the amount named was reasonably proportionate to the probable loss. It is said that "the law's sole purpose in departing from its usual rule of enforcing agreements, when it declines to enforce agreements for penalties, is to avoid the *extortion and injustice which a free power to stipulate damages would invite,* the proper test of whether a particular stipulation is a penalty (that is, is unenforceable) is whether, viewed as of the time of its making, it is reasonably proportioned to the probable loss which will ensue from a breach." (Emphasis added.) In *Kothe* v. *R. C. Taylor Trust,* 280 U.S. 224, 226 [50 S.Ct. 142, 74 L.Ed. 382], a tenant had stipulated that, in the event of his bankruptcy, the lessor should be entitled to damages equal to the rent for the balance of the term. The term was two years and the rent was $4,000 a year. The tenant became bankrupt fifteen months before the lease expired, the lessor demanded damages of $5,000 under the agreement. The Supreme Court said: "The amount thus stipulated is *so disproportionate to any damage reasonably to be anticipated* in the circumstances disclosed that we must hold the provision is for an unenforceable penalty." (Emphasis added.)

It is my opinion that the majority opinion is wrong for two reasons: The damages to be expected could have been ascertained at the time of entering into the contract and cannot be said, as a matter of law, to be "impracticable or extremely difficult" to fix; and that it cannot be said that the sum of $25 bears any reasonable proportion to the loss which might be expected from the failure of the fire detection system to operate.

I would affirm the judgment.

Respondents' petition for a rehearing was denied March 5, 1953. Carter, J., was of the opinion that the petition should be granted.